1

2 **UNITED STATES DISTRICT COURT**

3 **DISTRICT OF NEVADA**

4

5 FRANK ORTIZ                                    )
                                                )        3:05-cv-0113-LRH (VPC)
6              Plaintiff,                        )
                                                )
7        vs.                                     )        <u>**REPORT AND RECOMMENDATION**</u>
                                                )        <u>**OF U.S. MAGISTRATE JUDGE**</u>
8 DAVID KELLY, *et al*.                          )
                                                )
9              Defendants.                       )        July 2, 2007
   _____)

10

11        This Report and Recommendation is made to the Honorable Larry R. Hicks, United States

12 District Judge.  The action was referred to the undersigned Magistrate Judge pursuant to 28

13 U.S.C. § 636(b)(1)(B) and LR IB 1-4.  Before the court is defendants' motion for summary

14 judgment (#70).  Plaintiff opposed (#73) and filed a cross-motion for summary judgment (#74).

15

16 Defendants replied (#75) and opposed plaintiff's cross-motion (#82). Plaintiff replied (#83). The

17 court has thoroughly reviewed the record and the motions and recommends that defendants'

18 motion for summary judgment (#70) be granted in part and denied in part, and plaintiff's cross-

19 motion for summary judgment (#74) be denied.

20

21                    **I.  HISTORY & PROCEDURAL BACKGROUND**

22        Plaintiff Frank Ortiz ("plaintiff"), a *pro se* prisoner, is currently incarcerated in the

23 custody of the Nevada Department of Corrections ("NDOC") at Ely State Prison ("ESP") (#14).

24 Plaintiff brings his complaint pursuant to 42 U.S.C. §§ 1983, 1985 and 1986, alleging violations

25 of his First Amendment right to petition for redress of grievances without retaliation, First

26 Amendment right access to the courts, Eighth Amendment right to be free from cruel and unusual

27 punishment, and Fourteenth Amendment right to due process. *Id*. Plaintiff names as defendants

28 the NDOC; E.K. McDaniel, ESP Warden; Adam Endel and Dwight Neven, ESP Associate

Wardens; Glen Whorton, former ESP Assistant Director of Operations; Claude Willis, ESP

Disciplinary Chairman and Hearing Officer; Theodore D'Amico, ESP Medical Director; Fred

Klopfer, Ph.D., former ESP Mental Health Physician; and Larry Allphon, Charise Clayton, Loyde

Cobb, Charles Coleman, Richard Falge, Frank Graham, Clayton Hall, Cameron Horsley, Jared

Howes, Paul Hunt, David Kelly, Rod Lightsey, Herbert Little, Robert Marcum, Arthur Neagle,

Conrad Schaff, Robert Sedlacek and Drugh Waggoner, ESP Correctional Officers. *Id.* Due to

various dismissals, the remaining defendants are McDaniel, Endel, Neven, Cobb, Falge, Kelly,

Lightsey, Neagle, Schaff, and Sedlacek.[1]

Plaintiff brings ten causes of action, as follows:

- Count I: plaintiff alleges that from 2003 to the present, in violation of his Eighth Amendment right against cruel and unusual punishment, defendants denied him outdoor exercise for extended periods of time, and when he continually requested outdoor time, left him outside for extended periods, sometimes overnight, without adequate clothing, in freezing weather;

- Count II: plaintiff alleges that from 2003 to the present, in violation of his Eighth Amendment right, defendants incited other inmates against plaintiff as punishment by telling other inmates that plaintiff is a child molester and a rat, threatening other inmates with retaliation if they talk to plaintiff, and walking plaintiff past other inmates "with scant clothing while pointing out [plaintiff's] physical shortcomings;"

- Count III: plaintiff alleges that from 2003 to the present, in violation of his Eighth Amendment right, defendants had a policy of depriving plaintiff of sleep as punishment by leaving the lights on all night, flashing flashlights in plaintiffs face, and tapping on the window at night to wake him;

- Count IV: plaintiff alleges that from 2003 to the present, in violation of his Eighth

---

[1] Plaintiff originally filed suit in the Seventh Judicial Court of Nevada on October 18, 2004 (#2). On February 25, 2005, defendants removed to federal court pursuant to 28 U.S.C. § 1441. *Id.* On October 17, 2005, plaintiff filed his first amended complaint (#14). On January 6, 2006, the court dismissed defendant NDOC (#15). On July 27, 2006, the District Court approved and adopted this court's report and recommendation (#33) dismissing defendant Klopfer (#39 and #40). On March 23, 2007, the court dismissed the following defendants for failure to effect timely service pursuant to Federal Rule of Civil Procedure 4(m): Allphon, Clayton, Coleman, D'Amico, Graham, Hall, Horsely, Howes, Hunt, Little, Marcum, Waggoner, Whorton, and Willis (#85).

Amendment right, defendants had a policy of denying plaintiff access to basic hygiene by denying him water in his cell, keeping him in a cold cell without blankets or a jacket, forcing him to sleep on a urine soaked mattress, withholding showers, serving food with feces, leaving the toilet backed up for days, and stripping his cell so he must sleep on the floor with only boxers and a blanket for weeks;

•   Count V: plaintiff alleges that from 2003 to the present, in violation of his Eighth Amendment right, defendants had a policy of physically attacking plaintiff by placing him in four point restraints for two hour stretches for minor infractions, kicking him in the groin while in restraints, hitting him in the shoulder, placing restraints too tightly, and sexually assaulting him;

•   Count VI: plaintiff alleges that, in violation of his First Amendment right, defendants had a policy of restricting plaintiff's ability to petition for redress of grievances by limiting the number of grievances he may file, retaliating against him for filing too many grievances by writing notices of charges ("NOC") or imposing harsher punishment on him, placing him in the "torture chamber" to deter him from filing more grievances, withholding grievance forms, and disregarding grievances that contain disrespectful language;

•   Count VII: plaintiff alleges that from 2003 to the present, in violation of his First Amendment right, defendants had a policy of restricting plaintiff's access to the courts by preventing phone calls with attorneys, shaking down his cell and either confiscating or leaving in disarray his legal papers, forcing plaintiff to appear in court in socks, delaying or urinating in his legal mail, stealing his stamps, refusing to provide him with copies of NOCs against him, flooding his cell to destroy his legal papers, denying him the right to view his medical records except in half-hour stretches, and denying him access to library legal materials, all of which caused him to lose a summary judgment motion and impeded his ability to participate in discovery in "companion" cases;

•   Count VIII: plaintiff alleges that, in violation of his Fourteenth Amendment right to due process, defendants had a policy of filing false NOCs against plaintiff in retaliation for filing grievances, failing to serve notice of scheduled hearing dates, prohibiting him from calling witnesses or putting on a defense at hearings, and refusing to allow the proceedings or activities in his cell to be recorded, all of which has extended his stay in disciplinary segregation to February 13, 2011;

•   Count IX: plaintiff alleges that, in violation of his Fourteenth Amendment right to due process, defendants had a policy of involuntarily placing inmates in disciplinary segregation under the guise of voluntary admission to mental health, where the "torture chamber" is located. Specifically, in March 2003, defendants manufactured false charges against him, forged his name on an admission form, denied him all rights at his hearing, put him in the "torture chamber," kept him there for extended periods of time without due process and subjected him to a

3

treatment plan of forced medication and other circumstances that violated his Eighth Amendment rights;

- Count X: plaintiff alleges that all defendants conspired to deprive him of his right to equal protection of the laws based on his Mexican nationality.

*Id.*

Some procedural background is necessary.  On August 20, 2003, plaintiff filed a complaint in this court, case number 3:03-cv-00424-LRH (VPC)  ("*Ortiz I*").[2]  The complaint named five defendants and contained two causes of action for violations of plaintiff's Eighth and Fourteenth Amendment rights between March and July 2003, with respect to plaintiff's admission and stay in the ESP Mental Health Unit ("MHU") (#70, Exhibit A).  On September 16, 2005, the District Court in *Ortiz I* granted summary judgment in favor of the defendants.  *Id.*, Exhibit B. Plaintiff did not appeal the dismissal.

On October 18, 2004, plaintiff filed the current lawsuit in state court, which defendants removed to this court on February 25, 2005 (#2) ("*Ortiz II*").  Plaintiff names twenty-eight defendants and sets out ten causes of action (#14).  On March 2, 2006, defendant Klopfer filed a motion to dismiss, arguing that the doctrine of *res judicata* barred plaintiff's claims against him in *Ortiz II* (#23).  On July 27, 2006, the District Court approved and adopted this court's report and recommendation (#33) dismissing defendant Klopfer on *res judicata* grounds (#39 and #40). NDOC defendants now bring a motion for summary judgment, making similar preclusion arguments (#70).

The Court notes that although plaintiff was represented by counsel at certain points in this litigation, on August 31, 2006, the court granted plaintiff's counsel's motion to withdraw as attorney (#44).  Therefore, the plaintiff is proceeding *in pro se*.  "In civil rights cases where the

---

[2] To avoid confusion, the court will reference "*Ortiz I*" whenever it cites to a document in 3:03-cv-00424-LRH (VPC).  Otherwise, all citations are to the current case, 3:05-cv-0113-LRH (VPC).

plaintiff appears *pro se*, the court must construe the pleadings liberally and must afford plaintiff the benefit of any doubt." *Karim-Panahi v. Los Angeles Police Dep't*, 839 F.2d 621, 623 (9th Cir. 1988); *see also Haines v. Kerner*, 404 U.S. 519, 520-21 (1972).

## II. DISCUSSION & ANALYSIS

### A. Discussion

#### 1. Summary Judgment Standard

Summary judgment allows courts to avoid unnecessary trials where no material factual disputes exist. *Northwest Motorcycle Ass'n v. U.S. Dept. of Agriculture*, 18 F.3d 1468, 1471 (9th Cir. 1994). The court grants summary judgment if no genuine issues of material fact remain in dispute and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(C). In deciding whether to grant summary judgment, the court must view all evidence and any inferences arising from the evidence in the light most favorable to the nonmoving party. *Bagdadi v. Nazar*, 84 F.3d 1194, 1197 (9th Cir. 1996). In inmate cases, the courts must

> [d]istinguish between evidence of disputed facts and disputed matters of professional judgment. In respect to the latter, our inferences must accord deference to the views of prison authorities. Unless a prisoner can point to sufficient evidence regarding such issues of judgment to allow him to prevail on the merits, he cannot prevail at the summary judgment stage.

*Beard v. Banks*, __ U.S. __, 126 S.Ct. 2572, 2576 (2006). Where reasonable minds could differ on the material facts at issue, however, summary judgment should not be granted. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251 (1986).

The moving party bears the burden of informing the court of the basis for its motion, and submitting evidence which demonstrates the absence of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party has met its burden,

the party opposing the motion may not rest upon mere allegations or denials in the pleadings but must set forth specific facts showing that there exists a genuine issue for trial. *Anderson*, 477 U.S. at 248. Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. *Celotex*, 477 U.S. at 322-23.

### B. Analysis

#### 1. Defendants' Motion for Summary Judgment

Defendants generally argue that plaintiff's claims in *Ortiz II* are barred by the doctrines of issue preclusion, or in the alternative, claim preclusion (#70). Initially, plaintiff claims that because defendant Klopfer has already raised the preclusion issues in *Ortiz II*, the remaining defendants are themselves estopped from relitigating the preclusion issues (#73). Defendants' position is that this court in *Ortiz II* denied defendants' motion to join defendant Klopfer's motion to dismiss; therefore, this issue has not been litigated as to the remaining defendants (#75). The court agrees. On June 14, 2006, the court denied the remaining defendants' motion to join in defendant Klopfer's motion to dismiss because defendants had failed to file a memorandum of points and authorities as required by the local rules (#32). Therefore, NDOC defendants have not been heard on the preclusion issues.

#### a. Issue Preclusion (Collateral Estoppel)

Defendants assert that a review of the dismissal order in *Ortiz I* "reveals that most, if not all, of the underlying allegations in *Ortiz I* have now mutated into Ortiz's ten claims for relief in *Ortiz II*," and that the only difference between the two cases is that plaintiff has named additional defendants and alleged other constitutional violations. *Id.*, p. 4. Defendants contend that the

"new claims" in *Ortiz II* are based on the same factual allegations that the court in *Ortiz I* relied on and rejected. *Id.*, p. 7. Plaintiff asserts that the only claims the court may dismiss are "those, if any, pertaining to the period of time Friday, April 10, 2003, to July 07, 2003 and involving the incidence [sic], allegation that the plaintiff was illegally involuntarily admitted to the E.S.P. mental health unit" (#73).[3]

### (1) Law

Issue preclusion, also referred to as collateral estoppel,[4] "refers to 'the preclusive effect of a judgment in foreclosing relitigation of issues that have been actually and necessarily decided in earlier litigation.'" *In re Reynoso*, 477 F.3d 1117, 1122 (9th Cir. 2007), *citing Frank v. United Airlines, Inc.*, 216 F.3d 845, 850 n. 4 (9th Cir. 2000). The Ninth Circuit has held that issue preclusion may apply in cases in which the parties are not identical. *Jacobs v. CBS Broadcasting, Inc.*, 291 F.3d 1173, 1176 n. 2 (9th Cir. 2002). This is generally called "nonmutual collateral estoppel." *Id.* Defensive nonmutual collateral estoppel involves a defendant's attempt to preclude a plaintiff from relitigating an issue that the plaintiff previously litigated unsuccessfully against a different party. *State of Idaho Potato Com'n v. G&T Terminal Packaging, Inc.*, 425 F.3d 708, 713 n. 3 (9th Cir. 2005). "Defensive use of collateral estoppel precludes a plaintiff from relitigating identical issues by merely 'switching adversaries.' Thus, defensive collateral estoppel gives a plaintiff a strong incentive to join all potential defendants in the first action if possible." *Parklane Hosiery Co., Inc. v. Shore*, 439 U.S. 322, 329 (1979) (citation omitted). The

---

[3] Plaintiff also incorporates the arguments he set out in his opposition to defendant Klopfer's motion to dismiss (#26). These arguments primarily address claim preclusion and are included in that analysis below.

[4] The Supreme Court has, in recent years, has referred to collateral estoppel as "issue preclusion" and *res judicata* as "claim preclusion." *Syverson v. Int'l Business Machines Corp.*, 472 F.3d 1072, 1078 n.8 (9th Cir. 2007).

application of nonmutual collateral estoppel is appropriate only where: (1) there was a full and fair opportunity to litigate the identical issue in the prior action; (2) the issue was actually litigated; (3) the issue was decided in a final judgment; and (4) the party against whom issue preclusion is asserted was a party or in privity with a party to the prior action. *Syverson v. Int'l Business Machines Corp.*, 472 F,3d 1072, 1078 (9th Cir. 2007).

### (2) Issue Preclusion Analysis

Plaintiff alleged in *Ortiz I* that between March and July 2003, defendants Endel, Neven, and McDaniel violated his Eighth and Fourteenth Amendment rights (#70, Exhibit A).[5] Specifically, plaintiff alleged that on March 27, 2003, former defendant Klopfer was given a form with plaintiff's forged signature in which plaintiff purportedly requested voluntary admittance to the MHU. On April 10, 2003, defendants "voluntarily" admitted him into the MHU, although, plaintiff's admission was later changed to "involuntary." Defendants ignored or denied plaintiff's grievances and appeals and defendants' "treatment" consisted of punishing him in extreme manners. The custodial staff regularly threatened plaintiff with the loss of personal property, and at various times between April 28, 2003 and May 29, 2003, defendants confiscated all of his personal property, including his clothing (except his boxers), mattress, sheets, blankets, books, legal papers, and hygiene items such as soap, toothpaste, toothbrush, and toilet paper. Defendants also prohibited all out of cell activity, including yard time, visits, and haircuts. *Id*.

Defendants submit the court's order dismissing all claims in *Ortiz I* (#70, Exhibit B). The court set out plaintiff's further arguments in his *Ortiz I* motion papers that plaintiff was the subject of hatred and retaliation by prison guards and that prior to his transfer to the MHU, he had

---

[5] The named defendants in *Ortiz I* were Fred Klopfer, Dan Shaulis, Adam Endel, Dwight Neven, and E.K. McDaniel, however, the court here lists only those defendants who are common to both cases and remain as defendants in *Ortiz II*.

been placed in a penalty cell for no reason.  Plaintiff alleged that the mattress in the penalty cell was torn up, the guard controlled the light and water from outside the cell, and the bathroom call button and electrical sockets were covered.  Officers allegedly threatened plaintiff with physical and sexual harm.  Plaintiff received food through a slot that smelled of feces, and after not having a shower for eight days, he took a shower using the broken shower in his cell, which flooded his cell.  On another occasion, an officer turned on his shower from the outside, flooding his cell and ruining legal papers, and thereafter refused to give plaintiff a mop to clean the water.  Plaintiff alleged he was not allowed out of his cell for long periods of time.  *Id.*, pp. 3-4.  The court in *Ortiz I* concluded that plaintiff's allegations regarding his transfer to the MHU did not rise to the level of an "atypical and significant hardship," because the conditions of confinement were not materially different than plaintiff's conditions in disciplinary segregation, and his transfer to the MHU did not work a major disruption in his environment.  *Id.*, pp. 6-8.  The court noted that plaintiff had testified that he "frequently" voluntarily checked himself into the MHU, which supported that the MHU was not an atypical hardship.  *Id.*  The court found plaintiff had no liberty interest in preventing his transfer to the MHU.  *Id.*

The court in *Ortiz I* additionally concluded that plaintiff's Eighth Amendment claim failed.  *Id.*, p. 9.  While the court found that some of plaintiff's allegations were sufficient to rise to the level of an Eighth Amendment violation, there was no issue of fact as to whether defendants had acted with deliberate indifference to plaintiff's needs.  *Id.*, p. 10.  The evidence revealed that defendants' treatment plan – which did limit personal property items but also allowed plaintiff to earn the right to have other items – was justified because plaintiff had been acting strangely by smearing feces on his food box and had been diagnosed with mental and impulse control disorders.  *Id.*

**i. Full and fair opportunity to litigate identical issues**

The first question is whether plaintiff received a full and fair opportunity to litigate issues in *Ortiz I* which are identical to the issues in *Ortiz II*. *Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 746 (9th Cir. 2006). Defendants argue that despite being represented by counsel, participating in discovery, and presenting evidence, plaintiff was unable to create any genuine issue of material fact in *Ortiz I* as to either of his claims (#70, p. 7). Plaintiff maintains that the court in *Ortiz I* did not hear the merits of his claims prior to dismissing his complaint (#73). Plaintiff contends that his counsel in *Ortiz I* initially opposed defendants' motions for summary judgment by challenging the authenticity of the documents defendants submitted rather than on the merits. *Id*. In a subsequent hearing, the court stated that because the authenticity issue had been resolved, plaintiff's counsel could submit another opposition. *Id*. Plaintiff's counsel failed to file the supplemental opposition; therefore, plaintiff argues that the merits of his case were never presented to the court. *Id*.

The court has reviewed plaintiff's *Ortiz I* oppositions and concludes that plaintiff did indeed address the merits of each claim by arguing that there were triable issues of fact (*Ortiz I*, #106/107 and #108/109). Moreover, plaintiff submitted over 100 pages of exhibits to support his claims. *Id*. The District Court addressed the merits of each claim in depth in its order, and this court has no reason to doubt the outcome (#70, Exhibit B). Plaintiff was heard on the merits and had a full and fair opportunity to present his claims.

The court must also determine whether the issues decided in *Ortiz I* are identical to those in *Ortiz II*. *Reyn's Pasta Bella*, 442 F.3d at 746. The Ninth Circuit has developed factors to determine whether two issues are identical for purposes of collateral estoppel: (1) whether there is a substantial overlap between the evidence or argument to be advanced in the second

10

proceeding and that was advanced in the first; (2) whether the same rule of law is applied in both proceedings; (3) whether pretrial preparation and discovery in the first proceeding could reasonably be expected to apply to the second proceeding; and (4) how closely the claims are related in the two proceedings. *Resolution Trust Corp. V. Keating*, 186 F.3d 1110, 1116 (9th Cir. 1999).

The court finds that the issues in *Ortiz II*'s count IX are identical to the issues resolved in *Ortiz I*. *Ortiz I* involved Eighth Amendment and due process claims related to plaintiff's admission to and stay in the MHU between March and July 2003 (#70, Exhibit A). *Ortiz II*'s count IX alleges violations based on the same time frame and the same facts, including the involuntary admittance to the MHU, and deprivation of basic hygiene items, bedding and clothing, and food with feces on it (#14). Clearly, the same evidence presented in *Ortiz I* would be used in *Ortiz II*. *Ortiz II*'s count IX also involves the same law as the claims in *Ortiz I*.

Also identical are certain allegations plaintiff makes in *Ortiz II*'s counts I, IV, parts of VI, and parts of VII regarding the conditions of his confinement. A review of plaintiff's *Ortiz I* complaint, *see* #70, Exhibit B, pp. 3-4, reveals that plaintiff makes the same complaints in his *Ortiz II* complaint in counts I (denial outdoor exercise), IV (failure to provide basic sanitation), and partially in counts VI (allegation of ignoring or denying grievances) and VII (allegation of flooding his cell and destroying his legal papers) (#14). However, it is clear that plaintiff's complaint in *Ortiz I* is limited to plaintiff's admittance and stay in the MHU between March and July 2003. Therefore, any dismissal of counts I, IV, VI or VIII is limited to that time frame.

### ii. Issue actually litigated

The next question is whether the issues were "actually litigated" in the prior case. *Reyn's Pasta Bella*, 442 F.3d at 746. Defendants argue that the issues in *Ortiz II* were actually litigated

in *Ortiz I* and were necessary to support the court's grant of summary judgment (#70, p. 7).

The court has already rejected plaintiff's argument that the *Ortiz I* order did not address plaintiff's claims on their merits.  In *Ortiz I*, the court concluded that plaintiff had no liberty interest because there was atypical and significant hardship in the conditions of his confinement – the essential elements of a due process claim.  *See Sandin v. Conner*, 515 U.S. 472 (1995).  Likewise, the court held that there was no issue of material fact as to defendants' deliberate indifference, which is a necessary component of an Eighth Amendment claim.  *Farmer v. Brennan*, 511 U.S. 825, 828 (1994).  Moreover, the parties had completed discovery, plaintiff submitted over 100 pages of exhibits, and plaintiff was represented by counsel.  Thus, the second element is met.

### iii. Final Judgment

Plaintiff concedes that *Ortiz I* resulted in a final judgment on the merits as to the common defendants (#26, p. 8).  The evidence reveals that the Clerk of Court entered judgment in *Ortiz I* on September 16, 2005, disposing of the case completely, and that plaintiff did not appeal (#70, Exhibit C).  The court concludes that there was a final judgment on the merits as to all issues in *Ortiz I*.

### iv. Same Parties

Finally, issue preclusion only applies if it is asserted against someone who was a party or in privity with a party to the prior action.  *Reyn's Pasta Bella*, 442 F.3d at 746.  Here, defendants assert issue preclusion against the plaintiff, who was a party in *Ortiz I*.  Thus, this element is also satisfied.

Since all four issue preclusion elements have been met, count IX is dismissed in its entirety because it clearly relates only to plaintiff's MHU stay, and counts I, IV, VI (as to

grievances while in MHU) and VII (as to flooding of MHU cell) are dismissed for the time period

of plaintiff's MHU stay.  Based on the doctrine of defensive nonmutual issue preclusion, this

dismissal applies to all defendants.

### b. Claim Preclusion (*Res Judicata*)

Defendants argue in the alternative that plaintiff's complaint should be dismissed pursuant

to the doctrine of claim preclusion (#70, p. 10).  Plaintiff incorporates the arguments contained

in his opposition to defendant Klopfer's motion to dismiss.  In that opposition, plaintiff argues,

through counsel, that the claims in each action are different because *Ortiz I* attempted to obtain

relief for the involuntary admittance into the MHU and the conditions of confinement during his

subsequent stay, but *Ortiz II* "centers on" the time period after plaintiff was released from the

MHU, seeking redress for due process violations such as barring plaintiff's access to the courts

with respect to the discovery process in *Ortiz I*, failure to receive proper notice of hearings, and

violation of his right to be free from the unlawful administration of psychotropic drugs (#26, pp.

4-5).  Plaintiff also maintains that should he be allowed to proceed, the evidence in the two cases

would be different because of the different time periods, the new claims and the new defendants

in *Ortiz II*.  *Id*., pp. 5-6.  Defendants reply that the court mostly rejected these arguments in its

order dismissing defendant Klopfer (#75, p. 4, *citing* #39).

### (1) Law

"In order to bar a later suit under the doctrine of *res judicata*, an adjudication must (1)

involve the same "claim" as the later suit, (2) have reached a final judgment on the merits, and

(3) involve the same parties or their privies."  *Nordhorn v. Ladish Co., Inc*., 9 F.3d 1402, 1404

(9th Cir. 1993) (*citing Blonder-Tongue Laboratories v. Univ. of Ill. Found*., 402 U.S. 313, 323-24

(1971).  The Ninth Circuit has also held that "the doctrine of *res judicata* (or claim preclusion)

bars all grounds for recovery which *could have been asserted, whether they were or not*, in a prior suit between the same parties... on the same cause of action."   *Constantini v. Trans World Airlines*, 681 F.2d 1199, 1201 (9th Cir. 1982) (emphasis added).

### (2) Claim Preclusion Analysis

#### i. Same claims

Defendants contend that it is clear that *Ortiz II* involves identical claims as *Ortiz I* because both lawsuits involve events occurring in March and April 2003 when plaintiff alleges that he was improperly admitted to the MHU (#70, p. 11).   However, defendants alternatively argue that should the court construe the current complaint as asserting additional claims not brought in *Ortiz I*, the court should find that plaintiff could have brought those claims in *Ortiz I* because they are all based on the same facts.  *Id*.  Plaintiff argues that the claims in *Ortiz II* involve the time period after plaintiff was released from the MHU (#26, pp. 4-5).

The Ninth Circuit considers four factors in determining whether or not two claims are the "same" for purposes of *res judicata*: "(1) whether rights or interests established in the prior judgment would be destroyed or impaired by prosecution of the second action; (2) whether substantially the same evidence is presented in the two actions; (3) whether the two suits involve infringement of the same right; and (4) whether the two suits arise out of the same transactional nucleus of facts."  *Nordhorn*, 9 F.3d at 1405.

The key issue here is the time period.  Plaintiff's *Ortiz I* complaint encompasses March through July 2003 (#70, Exhibit A).  Plaintiff's *Ortiz II* complaint encompasses the time period of "2003 to the present" (#14).  The court concludes that any claims arising out of the same nucleus of facts that occurred up to and including the date plaintiff was released from the MHU in July 2003 that either (1) were asserted in *Ortiz I*, or (2) could have been asserted in *Ortiz I*,

must be dismissed from *Ortiz II* on claims preclusion grounds.  *Constantini*, 681 F.2d at 1201.

Counts I – V in *Ortiz II* generally relate to the conditions of plaintiff's confinement.  Plaintiff

alleged violations of his Eighth Amendment rights in *Ortiz I* with respect to his stay in the MHU,

and the court rejected these claims (#70, Exhibit B).  Although plaintiff is not clear as to when

in 2003 his *Ortiz II* claims begin, any intent on plaintiff's part that his *Ortiz II* complaint relate

to his stay in the MHU is improper on claim preclusion grounds.  Rights the defendants

established in *Ortiz I* would be destroyed if plaintiff is allowed to proceed with his MHU Eighth

Amendment claims in *Ortiz II*.  The parties would also use the same evidence as in *Ortiz I*

because both cases pertain to the conditions of his confinement in the MHU.  The court concludes

that with regards to plaintiff's MHU admittance and stay, counts I – V are the same claims as

alleged in *Ortiz I*.

Plaintiff claims in count VI that defendants denied him access to the grievance system,

in count VII that defendants denied him access to the courts, and in count VIII that defendants

violated his right to due process (#14).  For the most part, these are different claims than plaintiff

alleged in *Ortiz I*.  However, *res judicata* bars all grounds for recovery which *could have* been

asserted, whether they were or not, in a prior suit between the parties.  *Constantini v. Trans World

Airlines*, 681 F,2d 1199, 1201 (9th Cir. 1982) (emphasis added).  While it is unclear from

plaintiff's *Ortiz II* complaint whether plaintiff intends counts VI – VIII to include plaintiff's MHU

stay, it is clear that he could have brought such claims in *Ortiz I* because any such violations

would have already occurred.  To the extent that plaintiff intends that counts VI, VII and VIII

relate to his MHU stay, the court finds plaintiff should have brought these claims in *Ortiz I*.

The court concludes that *Ortiz II*'s counts I – V, with respect to the MHU, are the same

as those in *Ortiz I*.  The court further concludes that plaintiff could have brought counts VI – VIII

as they relate to his MHU stay in *Ortiz I*.[6]

### ii. Final judgment

The court concluded above that this element was satisfied.  *See supra*, pp. 10-11.

### iii. Privity of parties

In *Ortiz II*, plaintiff has sued three of the same defendants as in *Ortiz I*, but has also included numerous additional defendants.  Defendants argue that "nonmutual defensive claim preclusion" should apply to bar claims against all *Ortiz II* defendants, whether or not they were defendants in *Ortiz I*, because these defendants could have been included in *Ortiz I*.  *Id*.  Plaintiff argues that if the court dismisses any of the defendants on the basis of *res judicata*, it can only be those defendants common to both cases (#26, p. 9).

The authority that defendants cite to support the doctrine of "nonmutual defensive claim preclusion," does not support that proposition; instead, the cases defendants cite discuss only nonmutual *issue* preclusion.[7]  *See* #70, p. 12.  Moreover, the Supreme Court has held that while mutuality has been, for the most part, abandoned in cases involving collateral estoppel, it remains a part of the doctrine of *res judicata*.  *Nevada v. U.S.*, 463 U.S. 110, 136-38 (1983).  Therefore, unless the additional defendants are in privity with the original defendants, any dismissal would apply only to those defendants common to *Ortiz I* and *Ortiz II*.

---

[6] The court dismissed count IX above pursuant to the doctrine of issue preclusion.  Plaintiff alleges in count X that all defendants conspired to violate his right to equal protection of the laws based on his Mexican nationality.  However, as the court noted in its order dismissing defendant Klopfer (#33), plaintiff sets forth no specific facts to show such a conspiracy based on his Mexican nationality; thus, the court does not address this claim.

[7] Defendants do cite to a First Circuit case, in which the court appears to extend the doctrine of nonmutuality to claim preclusion/*res judicata* cases.  *See* #70, p. 12, *citing In re El San Juan Hotel Corporation*, 841 F.2d 6, 10-11 (1st Cir. 1988).  However, defendants cite no Ninth Circuit cases, and the court was unable to find one standing for that proposition.

Defendants fail to make a privity argument. The common defendants are McDaniel, Endel and Neven. Because all three *res judicata* elements are met only as to the common defendants, all claims relating to plaintiff's MHU stay are dismissed only as to them.

### 2. Plaintiff's Motion for Summary Judgment

Plaintiff filed a cross-motion for summary judgment, submitting evidence and arguing that he has proved his claims (#74). Defendants argue that in his cross-motion, plaintiff makes different claims and in different time frames than those alleged in his first amended complaint (#82).[8] Plaintiff argues that the time parameters of his complaint are October 18, 2002 – two years prior to the date he filed this case in state court – to September 13, 2005 – the date he states he filed his first amended complaint (#81, p. 1).

Plaintiff actually filed his first amended complaint on October 17, 2005 (#14). Since the complaint specifically limits the date of his allegations to "2003 to the present," the time parameter does not include events prior to 2003. *Id*. Moreover, any factual allegations plaintiff makes in his cross-motion that were not alleged in his first amended complaint cannot be included now, as plaintiff has not filed a motion for leave to amend his complaint. Plaintiff alleges in his cross-motion, among other things, that defendants violated his right to petition for redress of grievances by terminating his right to a response to grievances from 2001 – 2002 (#74). He further alleges that defendants violated his right to due process by effectively taking away his right to appeal NOCs from 2001 – 2002, and that defendants denied his grievances as "improper" between 2001 and 2002. *Id*. Finally, plaintiff contends in his cross-motion that defendants

---

[8] Part of defendants' concern may be explained by noting that in his cross-motion, plaintiff has taken some of the factual allegations in his complaint and has paired them with different constitutional violations than as set out in the complaint. Plaintiff may have mischaracterized some of his facts and claims in his cross-motion. The court notes this, and will address the proper factual assertion with the proper constitutional violation, as alleged in his complaint.

caused damage to his property, specifically his television and cable. *Id*.

### a. Eighth Amendment Conditions of Confinement

Plaintiff alleges that defendants violated his Eighth Amendment rights by inciting other inmates against him through calling him names and threatening him, and by moving him to what plaintiff calls the "torture chamber," a penalty cell (#74, p. 10).

An inmate may challenge the conditions of his confinement as a violation of his Eighth Amendment right to be free from cruel and unusual punishment if he satisfies objective and subjective standards. *Johnson v. Lewis*, 217 F.3d 726, 731 (9th Cir. 2000). The objective standard requires prison officials to provide inmates with adequate shelter, food, clothing, sanitation, medical care, and personal safety. *Id*. Excessive noise, twenty-four hour lighting, failure to provide an inmate with the opportunity for personal hygiene, and cells containing urine and feces can constitute Eighth Amendment violations. *See Keenan v. Hall*, 83 F.3d 1083, 1089-92 (9th Cir. 1996); *see also Hoptowit v. Spellman*, 753 F2d 779, 783 (9th Cir. 1985). The subjective standard requires a showing that prison officials were deliberately indifferent to the inmate's safety. *Johnson*, 217 F.3d at 731.

Plaintiff submits affidavits from other prisoners attesting to the conditions of confinement in disciplinary segregation, the infirmary and the MHU, which, if true, could constitute Eighth Amendment violations (#74, Exhibit E). However, this is not enough. Plaintiff has presented absolutely no evidence of deliberate indifference on the part of defendants, and no allegation that he incurred any harm. The court denies plaintiff's motion for summary judgment as to his Eighth Amendment claims.

### b. Retaliation and Access to the Courts

Plaintiff argues that NDOC regulations state that only the Assistant Director of Operations

can give an inmate an NOC for abusing the grievance process, but that many correctional officers have written him such an NOC, which proves that they were acting in retaliation against plaintiff for filing grievances (#74, pp. 4-5).

Prisoners have a right to meaningful access to the courts, and prison authorities may not penalize or retaliate against an inmate for exercising this right. *Bradley v. Hall*, 64 F.3d 1276, 1279 (9th Cir. 1995). A retaliation claim involves five elements: "(1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not advance a legitimate correctional goal." *Rhodes v. Robinson*, 408 F.3d 559, 567-68 (9th Cir. 2004).

Plaintiff submits copies of the many NOCs he has received between 2001 and 2006 (#74, Exhibits C and D). Even if the court had not already excluded pre-2003 events, a review of plaintiff's evidence reveals that all but one of plaintiff's submissions are either illegible, or were drafted by defendants who have been dismissed or were never named in the *Ortiz II* complaint. *Id*. Only one NOC was drafted by a current defendant – defendant Kelly – and this is not enough to prove retaliation. *Id*. Plaintiff also claims defendants gave him harsher punishments in retaliation for writing grievances by giving him these NOCs. *Id*., p. 5. Again, all of the NOCs plaintiff refers to were written by non-defendants. *Id*., p. 5 and Exhibit D. Plaintiff also submits three inmate affidavits attesting to verbal abuse from five correctional officers, none of whom are defendants in this case (#74, Exhibit G). Plaintiff further argues that defendants placed him in the "torture chamber" and conducted "shake-downs" of his cell in retaliation for filing grievances and to prevent his access to the courts, but submits no evidence of this. Finally, plaintiff submits a memo to prove retaliation by defendant Endel. The memo returned plaintiff's grievance for

19

filing more than four unfounded, frivolous or vexatious grievances per month (#74, Exhibit H). This one memorandum is not enough to prove retaliation.  The court denies summary judgment.

### c. Due Process

Plaintiff argues that because defendants incite other inmates to attack him, restrict his canteen, phone, yard and appliance privileges, and give him false NOCs, he is subject to an "atypical and significant hardship," such that he has a liberty interest in remaining free from disciplinary segregation (#74, p. 9).

In *Sandin v. Conner*, 515 U.S. 472 (1995), the Supreme Court held states may under some circumstances create liberty interests protected by the Due Process clause, but that those liberty interests "will be generally limited to freedom from restraint which... impose[s] atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Id*. at 484. There is no single standard to determine whether a prisoner's condition is an atypical and significant hardship and the "condition or combination of conditions or factors... requires case by case, fact by fact consideration." *Ramirez v. Galaza*, 334 F.3d 850, 861 (9th Cir. 2003), *citing Keenan v. Hall*, 83 F.3d 1083, 1089 (9th Cir. 1996).  The guidance provided by *Sandin* is helpful:

> (1) whether the challenged condition "mirrored those conditions imposed upon inmates in administrative segregation and protective custody," and thus comported with the prison's discretionary authority; (2) the duration of the condition, and the degree of restraint imposed; and (3) whether the state's action will invariably affect the duration of the prisoner's sentence.

*Ramirez*, 334 F.3d at 861, *citing Sandin*, 515 U.S. at 486-87 and *Keenan*, 83 F.3d at 1089.

Plaintiff submits inmate affidavits to support his allegations.  *Id*., Exhibits E and G. However, there is no evidence before the court to determine whether the conditions described therein "mirror" the conditions in administrative segregation and protective custody, nor is there

information to prove that plaintiff's time in disciplinary segregation will lengthen plaintiff's sentence.  Therefore, the court cannot find a liberty interest and denies plaintiff's motion for summary judgment.

## III. CONCLUSION

Based on the foregoing and for good cause appearing, the court concludes that:

1) There are identical issues in *Ortiz II*'s counts I, IV, and IX, and portions of VI and VII, as were in *Ortiz I*.  The plaintiff received a full and fair opportunity to litigate the issues, and the issues were actually and finally litigated.  Count IX is dismissed in its entirety.  Counts I, IV, VI (as to grievances while in the MHU), and VII (as to flooding his cell), are dismissed with respect to plaintiff's admittance and incarceration in the MHU between March and July 2003.  Based on the doctrine of defensive nonmutual issue preclusion, the dismissals apply to all *Ortiz II* defendants.

2) Some of plaintiff's claims in *Ortiz II* are the same as those in *Ortiz I* because the interests established in *Ortiz I* would be destroyed by prosecution of *Ortiz II*, the parties would use the same evidence in *Ortiz II* as they did in *Ortiz I*, and the two cases involve infringement of the same rights and arise out of the same nucleus of facts, namely plaintiff's MHU stay in 2003.  To the extent that there are different claims in *Ortiz II* that are related to plaintiff's admittance and incarceration in the MHU, the plaintiff could have brought these in *Ortiz I* and they are barred by the doctrine of claim preclusion.  The claims in *Ortiz I* ended in final judgment.  The doctrine of claim preclusion applies only to the common defendants, McDaniel, Endel and Neven.  Counts I – VIII are dismissed as to defendants McDaniel, Endel and Neven, with respect to plaintiff's admittance and incarceration in the MHU between March and July 2003.

3) Viewing the evidence in the light most favorable to the defendants, plaintiff failed to present sufficient evidence to prove violations of his First, Eighth or Fourteenth Amendment rights.  The court denies plaintiff's cross-motion for summary judgment.

As such, the court recommends that plaintiff's cross motion for summary judgment (#74) be **DENIED**.  The court further recommends defendants' motion for summary judgment (#70) be **GRANTED IN PART** as to:

(1) Count IX in its entirety;

(2) Counts I, IV, VI (as to grievances while in MHU) and VII (as to flooding of MHU cell)

with respect to plaintiff's admittance and incarceration in the MHU between March and July

2003, as to all defendants;

(3) Counts I – VIII with respect to plaintiff's admittance and incarceration in the MHU

between March and July 2003, as to defendants McDaniel, Endel and Neven.

The parties are advised:

1. Pursuant to 28 U.S.C.  § 636(b)(1)(c) and Rule IB 3-2 of the Local Rules of

Practice, the parties may file specific written objections to this report and recommendation within

ten days of receipt.  These objections should be entitled "Objections to Magistrate Judge's Report

and Recommendation" and should be accompanied by points and authorities for consideration

by the District Court.

2. This report and recommendation is not an appealable order and any notice of

appeal pursuant to Fed. R. App. P. 4(a)(1) should not be filed until entry of the District Court's

judgment.

///

///

///

///

///

///

///

///

///

///

22

# IV.  RECOMMENDATION

**IT IS THEREFORE RECOMMENDED** that plaintiff's cross motion for summary judgment (#74) be **DENIED**.  It is further recommended that defendants' motion for summary judgment (#70) be **GRANTED IN PART** as to:

(1) Count IX in its entirety;

(2) Counts I, IV, VI (as to grievances while in MHU) and VII (as to flooding of MHU cell) with respect to plaintiff's admittance and incarceration in the MHU between March and July 2003, as to all defendants;

(3) Counts I – VIII with respect to plaintiff's admittance and incarceration in the MHU between March and July 2003, as to defendants McDaniel, Endel and Neven

**DATED:** July 2, 2007.

_____
**UNITED STATES MAGISTRATE JUDGE**

23