1

2

3

4

5

6                          **UNITED STATES DISTRICT COURT**

7                                **DISTRICT OF NEVADA**

8

9    FRANK ORTIZ,                          )
                                           )
10                Plaintiff,               )          3:05-cv-00113-LRH-VPC
                                           )
11   vs.                                   )
                                           )          <u>ORDER</u>
12   DAVID KELLY, *et al.*,                )
                                           )
13                Defendants.              )
     _____/

14

15          This is a civil rights complaint pursuant to 42 U.S.C. §§ 1983, 1985 and 1986. Pending

16   before the court are plaintiff's second motion for summary judgment filed January 8, 2009 (Docket #

17   241), and defendants' second motion for summary judgment filed February 20, 2009 (Docket # 255).

18   This case proceeds on plaintiff's amended complaint filed September 13, 2005 (Docket # 13).

19                              **PROCEDURAL HISTORY[1]**

20          Plaintiff is a prisoner incarcerated at Ely State Prison ("ESP").   On August 20, 2003, plaintiff

21   filed a complaint in this court, which was designated case number 3:03-cv-00424-LRH (VPC).  The

22   complaint named five defendants and contained two causes of action for violations of plaintiff's

23   Eighth and Fourteenth Amendment rights between March and July 2003, with respect to plaintiff's

24   admission and stay in the ESP Mental Health Unit ("MHU") (Docket #70, Exhibit A).  On

25   September 16, 2005, the court granted summary judgment in favor of the defendants (Docket # 70,

26

27          [1]This procedural history is taken from that set forth in the Report and Recommendation entered

28   in this case by Magistrate Judge Cooke on July 2, 2007.

1  Exhibit B).  Plaintiff did not appeal from the judgment.

2          On October 18, 2004, plaintiff filed the current lawsuit in state court.  Defendants removed

3  the case to this court pursuant to 28 U.S.C. § 1441 on February 25, 2005 (Docket #2).  Plaintiff named

4  as defendants the Nevada Department of Corrections ("NDOC"); E.K. McDaniel, ESP Warden;

5  Adam Endel and Dwight Neven, ESP Associate Wardens; Glen Whorton, former ESP Assistant

6  Director of Operations; Claude Willis, ESP Disciplinary Chairman and Hearing Officer; Theodore

7  D'Amico, ESP Medical Director; Fred Klopfer, Ph.D., former ESP Mental Health Physician; and

8  Larry Allphon, Charise Clayton, Loyde Cobb, Charles Coleman, Richard Falge, Frank Graham,

9  Clayton Hall, Cameron Horsley, Jared Howes, Paul Hunt, David Kelly, Rod Lightsey, Herbert Little,

10  Robert Marcum, Arthur Neagle, Conrad Schaff, Robert Sedlacek and Drugh Waggoner, ESP

11  Correctional Officers.  Due to various dismissals, the remaining defendants are McDaniel, Endel,

12  Neven, Cobb, Falge, Kelly, Lightsey, Neagle, Schaff, and Sedlacek.

13          Plaintiff originally brought the following ten causes of action:

14      •  Count I: plaintiff alleges that from 2003 to the present, in violation of his Eighth
           Amendment right against cruel and unusual punishment, defendants denied him
15         outdoor exercise for extended periods of time, and when he continually requested
           outdoor time, left him outside for extended periods, sometimes overnight, without
16         adequate clothing, in freezing weather;

17      •  Count II: plaintiff alleges that from 2003 to the present, in violation of his Eighth
           Amendment right, defendants incited other inmates against plaintiff as punishment by
18         telling other inmates that plaintiff is a child molester and a rat, threatening other
           inmates with retaliation if they talk to plaintiff, and walking plaintiff past other
19         inmates "with scant clothing while pointing out [plaintiff's] physical shortcomings;"

20      •  Count III: plaintiff alleges that from 2003 to the present, in violation of his Eighth
           Amendment right, defendants had a policy of depriving plaintiff of sleep as
21         punishment by leaving the lights on all night, flashing flashlights in plaintiffs face,
           and tapping on the window at night to wake him;
22
        •  Count IV: plaintiff alleges that from 2003 to the present, in violation of his Eighth
23         Amendment right, defendants had a policy of denying plaintiff access to basic hygiene
           by denying him water in his cell, keeping him in a cold cell without blankets or a
24         jacket, forcing him to sleep on a urine soaked mattress, withholding showers, serving
           food with feces, leaving the toilet backed up for days, and stripping his cell so he
25         must sleep on the floor with only boxers and a blanket for weeks;

26      •  Count V: plaintiff alleges that from 2003 to the present, in violation of his Eighth
           Amendment right, defendants had a policy of physically attacking plaintiff by placing
27         him in four point restraints for two hour stretches for minor infractions, kicking him
           in the groin while in restraints, hitting him in the shoulder, placing restraints too
28         tightly, and sexually assaulting him;

2

- • <u>Count VI</u>: plaintiff alleges that, in violation of his First Amendment right, defendants had a policy of restricting plaintiff's ability to petition for redress of grievances by limiting the number of grievances he may file, retaliating against him for filing too many grievances by writing notices of charges ("NOC") or imposing harsher punishment on him, placing him in the "torture chamber" to deter him from filing more grievances, withholding grievance forms, and disregarding grievances that contain disrespectful language;

- • <u>Count VII</u>: plaintiff alleges that from 2003 to the present, in violation of his First Amendment right, defendants had a policy of restricting plaintiff's access to the courts by preventing phone calls with attorneys, shaking down his cell and either confiscating or leaving in disarray his legal papers, forcing plaintiff to appear in court in socks, delaying or urinating in his legal mail, stealing his stamps, refusing to provide him with copies of NOCs against him, flooding his cell to destroy his legal papers, denying him the right to view his medical records except in half-hour stretches, and denying him access to library legal materials, all of which caused him to lose a summary judgment motion and impeded his ability to participate in discovery in "companion" cases;

- • <u>Count VIII</u>: plaintiff alleges that, in violation of his Fourteenth Amendment right to due process, defendants had a policy of filing false NOCs against plaintiff in retaliation for filing grievances, failing to serve notice of scheduled hearing dates, prohibiting him from calling witnesses or putting on a defense at hearings, and refusing to allow the proceedings or activities in his cell to be recorded, all of which has extended his stay in disciplinary segregation to February 13, 2011;

- • <u>Count IX</u>: plaintiff alleges that, in violation of his Fourteenth Amendment right to due process, defendants had a policy of involuntarily placing inmates in disciplinary segregation under the guise of voluntary admission to mental health, where the "torture chamber" is located.  Specifically, in March 2003, defendants manufactured false charges against him, forged his name on an admission form, denied him all rights at his hearing, put him in the "torture chamber," kept him there for extended periods of time without due process and subjected him to a treatment plan of forced medication and other circumstances that violated his Eighth Amendment rights;

- • <u>Count X</u>: plaintiff alleges that all defendants conspired to deprive him of his right to equal protection of the laws based on his Mexican nationality.

On January 6, 2006, the court dismissed defendant NDOC (Docket #15). On March 2, 2006, defendant Klopfer filed a motion to dismiss, arguing that the doctrine of *res judicata* barred plaintiff's claims against him (Docket #23).  On July 27, 2006, the court approved and adopted Magistrate Judge Cooke's report and recommendation (Docket #33) dismissing defendant Klopfer on *res judicata* grounds (Docket #39 and #40).

On November 30, 2006, NDOC defendants brought a motion for summary judgment, making similar preclusion arguments (Docket #70).  On December 13, 2006, plaintiff brought a cross motion for summary judgment (Docket # 74).   On March 23, 2007, the court dismissed the following

3

1  defendants for failure to effect timely service pursuant to Federal Rule of Civil Procedure 4(m):

2  Allphon, Clayton, Coleman, D'Amico, Graham, Hall, Horsely, Howes, Hunt, Little, Marcum,

3  Waggoner, Whorton, and Willis (Docket #85).   On July 2, 2007, Magistrate Judge Cooke entered a

4  report and recommendations, recommending that plaintiff's cross motion for summary judgment

5  (Docket #74) be denied.  Magistrate Judge Cooke also recommended that defendants' motion for

6  summary judgment (Docket #70) be granted in part as to: (1) Count IX in its entirety; (2) Counts I,

7  IV, VI (as to grievances while in MHU) and VII (as to flooding of MHU cell) with respect to

8  plaintiff's admittance and incarceration in the MHU between March and July 2003, as to all

9  defendants; and (3) Counts I – VIII with respect to plaintiff's admittance and incarceration in the

10  MHU between March and July 2003, as to defendants McDaniel, Endel and Neven.   After allowing

11  the parties to file objections, the court adopted the findings and recommendations on September 5,

12  2007 (Docket # 106).

13      On December 16, 2008, the court entered an order directing that motions for summary

14  judgment by the parties on any matters that had not been previously decided by the court should be

15  filed and served on or before February 16, 2009.  Now pending before the court are plaintiff's second

16  motion for summary judgment filed January 8, 2009 (Docket # 241), and defendants' second motion

17  for summary judgment filed February 20, 2009 (Docket # 255).

18                              **LEGAL STANDARD**

19      Summary judgment is appropriate when it is demonstrated that there exists no genuine issue

20  as to any material fact, and that the moving party is entitled to judgment as a matter of law.  Fed. R.

21  Civ. P. 56(c).  Under summary judgment practice, the moving party

22          [A]lways bears the initial responsibility of informing the district court
        of the basis for its motion, and identifying those portions of the "the

23          pleadings, depositions, answers to interrogatories, and admissions on
        file, together with the affidavits, if any," which it believes demonstrate

24          the absence of a genuine issue of material fact.

25  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  "[W]here the nonmoving party will bear the

26  burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in

27  reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions on file.'"  Id.

28  Indeed, summary judgment should be entered, after adequate time for discovery and upon motion,

1    against a party who fails to make a showing sufficient to establish the existence of an element

2    essential to that party's case, and on which that party will bear the burden of proof at trial.  Id. at 322.

3    "[A] complete failure of proof concerning an essential element of the nonmoving party's case

4    necessarily renders all other facts immaterial."  Id.  In such a circumstance, summary judgment

5    should be granted, "so long as whatever is before the district court demonstrates that the standard for

6    entry of summary judgment, as set forth in Rule 56(c) is satisfied."  Id. at 323.

7         If the moving party meets its initial responsibility, the burden then shifts to the opposing

8    party to establish that a genuine issue as to any material fact actually does exist.  Matsushita Elec.

9    Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).

10        In attempting to establish the existence of this factual dispute, the opposing party may not

11   rely upon the denials of its pleadings, but is required to tender evidence of specific facts in the form

12   of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists.

13   Rule 56(e); Matsushita, 475 U.S. at 586 n.11.  The opposing party must demonstrate that the fact in

14   contention is material, i.e., a fact that might affect the outcome of the suit under the governing law,

15   Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec.

16   Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the

17   evidence is such that a reasonable jury could return a verdict for the nonmoving party, Wool v.

18   Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987).

19        In the endeavor to establish the existence of a factual dispute, the opposing party need not

20   establish a material issue of fact conclusively in its favor.  It is sufficient that "the claimed factual

21   dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at

22   trial."  T.W. Elec. Serv., 809 F.2d at 631.  Thus, the "purpose of summary judgment is to 'pierce the

23   pleadings and to assess the proof in order to see whether there is a genuine need for trial.'"

24   Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963

25   amendments).

26        In resolving the summary judgment motion, the court examines the pleadings, depositions,

27   answers to interrogatories, and admissions on file, together with the affidavits, if any.  Rule 56(c).

28   The evidence of the opposing party is to be believed, Anderson, 477 U.S. at 255, and all reasonable

1    inferences that may be drawn from the facts placed before the court must be drawn in favor of the

2    opposing party, <u>Matsushita</u>, 475 U.S. at 587 (citing <u>United States v. Diebold, Inc.</u>, 369 U.S. 654, 655

3    (1962)(per curiam).  Nevertheless, inferences are not drawn out of the air, and it is the opposing

4    party's obligation to produce a factual predicate from which the inference may be drawn.  <u>Richards v.</u>

5    <u>Nielsen Freight Lines</u>, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), <u>aff'd</u>, 810 F.2d 898, 902 (9th

6    Cir. 1987).

7            Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show

8    that there is some metaphysical doubt as to the material facts.  Where the record taken as a whole

9    could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for

10   trial.'"  <u>Matsushita</u>, 475 U.S. at 587 (citation omitted).

11                                                    **DISCUSSION**

12   **Spoliation**

13           On September 23, 2008, Plaintiff filed a motion seeking a finding that defendants committed

14   acts of spoliation (Docket # 188).  Defendants filed a response to that motion on October 13, 2008

15   (Docket # 203).  On December 4, 2008, plaintiff filed a second motion for a finding of spoliation

16   against defendants (Docket # 234).  Defendants filed a response to that motion on December 15,

17   2008 (Docket # 235).  In his first motion, plaintiff claims that two documents from 2003 are missing

18   from his property file.  In his second motion, plaintiff lists five documents which he claims are

19   missing. Plaintiff asks the court to find that these documents were intentionally destroyed, thus

20   allowing plaintiff to argue a negative inference against defendants.  Although both of these motions

21   were filed in the context of a pending trial, plaintiff references them in his opposition to defendants'

22   motion for summary judgment.

23           After defendants opposed plaintiff's first motion for spoliation, plaintiff moved to strike the

24   opposition as untimely (Docket # 209) and defendants opposed the motion to strike (Docket # 217).

25   In his reply to that opposition, plaintiff admitted he had failed to demonstrate that any spoliation

26   occurred, stating "it is true that Plaintiff has not demonstrated that in fact 'spoliation' has occurred,

27   but only because he can only show that the documents in question are being withheld."  (Docket #

28   227 at 3).  Plaintiff then asked the court to order defendants to produce the documents.

1   The time for discovery in this case is long past, and plaintiff does not make the showing

2   necessary under Rule 56(f), Federal Rules of Civil Procedure, to allow other discovery to be

3   undertaken.  Accordingly, the court rejects plaintiff's request for relief in the form of further

4   discovery.

5   The spoliation of evidence rule is a rule of evidence to be administered at the discretion of

6   the court.  Vodusek v. Bayliner Marine Corp., 71 F.3d 148, 156 (4th Cir. 1995).  The trial court has

7   broad discretion to permit a jury to draw adverse inferences from the loss or destruction of evidence

8   against the party responsible for that behavior.  Glover v. BIC Corp., 6 F.3d 1318, 1329 (9th Cir.

9   1993).  In this case, the court finds that plaintiff has not demonstrated that any of the documents in

10  question were lost or withheld by any defendant in this case.  Plaintiff merely asserts that the

11  documents are missing from his file and then presumes that defendants are responsible.  Further, as

12  defendants argue, there is no evidence before the court that the documents were not missing prior to

13  the filing of the instant litigation.  The court therefore declines to find spoliation in this case and will

14  not draw any negative inference in its consideration of the pending motions for summary judgment.

15  **Defendants' Motion for Summary Judgment**

16  First Cause of Action

17  In his first cause of action, plaintiff alleges that defendants have a policy of depriving inmates

18  of outdoor exercise as a punishment, and have used this method to punish and retaliate against

19  plaintiff on many occasions from 2003 to the present by denying him exercise for months at a time.

20  Plaintiff also alleges that alternatively, to discourage plaintiff from requesting outdoor exercise,

21  defendants have on many occasions when he has demanded outdoor exercise left plaintiff outside for

22  extended periods, including overnight, without adequate clothing in freezing weather.  Plaintiff

23  alleges that by subjecting him to the above treatment, Defendants subjected him to cruel and unusual

24  punishment in violation of the Eighth Amendment and deprived him of his right to due process

25  under the Fourteenth Amendment.

26  Defendant asserts that plaintiff's disciplinary history for the relevant period of time shows

27  that plaintiff was sanctioned for a loss of yard three times between 2003 and 2005.  These include the

28  following:

1   ● March 21, 2003 - loss of yard for 10 days as a result of a G18 (delaying, hindering,
2   interfering with staff)
3   ● March 26, 2003 - loss of yard of 10 days as a result of a G18 (delaying, hindering,
4   interfering with staff)
5   ● July 10, 2003 - loss of yard for 90 days as a result of a MJ 28 (work
6   stoppage/demonstration).

7   To prevail on a "conditions of confinement" claim, a plaintiff must show serious deprivation

8   and deliberate indifference.  See Wilson v. Seiter, 501 U.S. 294, 297-300, 111 S.Ct. 2321,

9   2323-2325 (1991).  The Ninth Circuit has held that exercise is "one of the basic human necessities

10  protected by the Eighth Amendment." LeMaire v. Maass, 12 F.3d 1444, 1457 (9th Cir.1993).

11  In regard to the two sanctions of loss of yard for 10 days, defendants argue that this 20 day

12  loss of yard does not amount to a serious deprivation.  Defendants rely on May v. Baldwin, 109 F.3d

13  557, 565 (9th Cir. 1997), in which a prisoner was deprived of outdoor exercise for 21 days while in a

14  disciplinary segregation unit.  The Ninth Circuit reiterated the established standard for a  "conditions

15  of confinement" claim; i.e., that a plaintiff must show serious deprivation and deliberate

16  indifference.  Id. at 565.  It held, however,  that "a temporary denial of outdoor exercise with no

17  medical effects is not a substantial deprivation."  Id.  It found the 21-day loss of yard distinguishable

18  from the long-term deprivations discussed in Allen v. Sakai, 48 F.3d 1082, 1088 (9th Cir.1994)

19  (stating that a long-term deprivation of exercise is a denial of a basic human need in violation of the

20  Eighth Amendment), cert. denied, 514 U.S. 1065, 115 S.Ct. 1695 (1995), and Spain v. Procunier,

21  600 F.2d 189, 199-200 (9th Cir.1979) (concluding that the deprivation of outdoor exercise for a

22  "period of years" contravenes the Eighth Amendment).  It thus affirmed the district court's grant of

23  summary adjudication to the defendants on the Eighth Amendment claim.

24  In regard to plaintiff's 90-day loss of yard, defendants note initially that this loss of yard was

25  a sanction imposed for misconduct on the exercise yard.  Plaintiff was charged with three general

26  violations and a major violation, and was found guilty on all charges. Defendants argue that the

27  sanction imposed was authorized by NDOC Administrative Regulation ("AR") 707, because the

28  violations occurred while plaintiff was on the exercise yard and also because plaintiff was found

8

1    guilty of a major violation.

2           Defendants rely on LeMaire v. Maass, in which the plaintiff argued that the deprivation of

3    outdoor exercise for nearly five years constituted cruel and unusual punishment.   The Ninth Circuit

4    rejecting that claim, finding that the subjective requirements for an Eighth Amendment violation

5    were not met.  Id. at 1458.   The court specifically held that the decision by prison officials to limit

6    the plaintiff's outside exercise privileges does not reflect "deliberate indifference," nor was the

7    restriction imposed "maliciously or sadistically for the very purpose of causing harm." Id.

8    The court rested its decision on the fact that the prison authorities had limited the plaintiff's outdoor

9    activities based on his own misconduct, which they found raised serious and legitimate security

10   concerns within the prison. Id.  The court found:

11           Thus LeMaire's claim does not survive scrutiny under the subjective analysis
             mandated by Wilson. Unlike the situation in Spain, the DSU does not have a broad
12           policy which prohibits outside exercise for all inmates. DSU inmates free of
             infractions for forty-five days have abundant exercise privileges available to them in
13           the DSU. This includes exercise privileges outside of their cells and out-of-doors five
             days a week. All LeMaire had to do was to follow the rules. In each instance resulting
14           in the curtailment of his exercise privileges, LeMaire was afforded an appropriate
             hearing before the sanction was imposed. At no time was the imposition of this
15           sanction arbitrary or capricious.

16   Id.   Defendants argue that plaintiff's loss of yard for 3 months is not unlike the situation in LeMaire.

17   They stress that inmates confined to the ESP infirmary unit ordinarily receive five hours of outdoor

18   exercise per week.  Further, as with LeMaire, plaintiff's 90-day loss of outdoor exercise privileges

19   came about as a direct result of plaintiff's disciplinary violation, for which he received the sanction

20   of loss of yard at a disciplinary hearing.  Defendants conclude, therefore, that as the Ninth Circuit

21   found in LeMaire, plaintiff's loss of yard privileges did not amount to a violation of the Eighth

22   Amendment.

23           Finally, Defendants argue that they are entitled to summary adjudication on plaintiff's claim

24   that he was left outside on the exercise yard.   Plaintiff claimed in his deposition, D MSJ 7,  that

25   defendants, who were supervisory staff, failed to follow the policy of forcing him to come in off the

26   yard after he "captured the yard," i.e., failed to come in.   Defendants argue that they are entitled to

27   summary adjudication on this claim, because a prison official's failure to follow a prison regulation

28   does not state a claim unless a liberty interest is involved.

1     Additionally, defendants argue that even if his claim that supervisory personnel failed to

2    follow policy did state a claim, Plaintiff cannot make the requisite showing of personal participation

3    by a named defendant.  Defendants rely on Taylor v. List, 880 F.2d 1040, in which the court held that

4    personal liability under Section 1983 arises only upon a showing of personal participation by a

5    defendant.  Specifically, defendants argue that plaintiff cannot show that any of the named

6    defendants actually participated in the act of leaving plaintiff on the yard.

7     Supervisory personnel are generally not liable under section 1983 for the actions of their

8    employees under a theory of respondeat superior and, therefore, when a named defendant holds a

9    supervisorial position, the causal link between him and the claimed constitutional violation must be

10   specifically alleged.  See Fayle v. Stapley, 607 F.2d 858, 862 (9th Cir. 1979);  Mosher v. Saalfeld,

11   589 F.2d 438, 441 (9th Cir. 1978), cert. denied, 442 U.S. 941 (1979). In this case, plaintiff does not

12   allege supervisory liability, but rather direct liability on the part of defendants.  Specifically, he

13   alleges in his amended complaint that, "defendants have on many occasions when he has

14   vociferously demanded outdoor exercise left ORTIZ outside for extended periods (sometimes

15   overnight) without adequate clothing in freezing weather in the dead of winter."   As defendants

16   argue, because plaintiff cannot show that any named defendant participated in leaving him on the

17   yard, he cannot not show the requisite personal participation necessary to state a claim against any

18   named defendant.

19   The court finds that defendants have met their burden as the moving parties of informing the

20   court of the basis for their motion.  The burden therefore shifts to plaintiff to establish the existence

21   of a genuine issue as to any material fact.  See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,

22   475 U.S. at 586.  In opposing defendants' motion for summary judgment, plaintiff repeats his claim

23   that defendants Kelly and Sedlacek deprived him of outdoor exercise for months on end.   He states,

24   however, that his claim against defendants Kelly and Sedlacek have nothing to do with sanctions

25   imposed under the NDOC code of discipline.  Rather, plaintiff states that his claim against these

26   defendants relates to instances when the defendants would simply not ask him whether he wanted

27   yard, but falsely claimed that they called plaintiff and he either refused or failed to respond.  Plaintiff

28   argues that the fact that this conduct violated NDOC policies constitutes circumstantial evidence that

1   the defendants acted in retaliation

2        Plaintiff argues that, "[t]he allegations in this first cause of action, if taken by themselves may

3   not constitute violations of the plaintiff's rights.  But when taken as part of the whole  .   .   .

4   generally, they all constitute violations of his rights."  While plaintiff claims that defendants cannot

5   prove that Kelly and Sedlacek did not deprive him of yard in the manner he suggests, plaintiff also

6   admits that he cannot prove that they did.  He therefore concludes that this constitutes a material fact

7   on which reasonable minds could differ, implying that the issue needs to go to a jury.  Plaintiff's

8   analysis is faulty.

9        Plaintiff is correct that whether defendants deprived him of outdoor exercise for months on

10   end is a material fact in this case.  Plaintiff, however, has not carried his burden as the party opposing

11   defendants' motion for summary judgment of establishing that a genuine issue as to this fact actually

12   exists.  That is, plaintiff has merely relied on the allegations in his complaint, and has not tendered

13   evidence of specific facts in support of his contention.  This is insufficient under Rule 56(e) to show

14   the existence of a genuine issue for trial.   Further, the court finds that under the law cited by

15   defendants and discussed above, defendants are entitled to judgment on this each issue raised in this

16   cause of action.  Accordingly, the court will grant defendants summary adjudication on the first

17   cause of action.

18   <u>Second Cause of Action</u>

19        In his second cause of action, Plaintiff alleges that defendants have a policy of inciting other

20   inmates against him as punishment, and have used this method to punish and retaliate against him on

21   many occasions.  Specifically, plaintiff alleges that defendants have carried out this policy by telling

22   other inmates that plaintiff is a child molester and a rat, by threatening other inmates with retaliation

23   if they talk to plaintiff, and by walking plaintiff past other inmates with scant clothing while pointing

24   out plaintiff's physical shortcomings to other inmates.  Plaintiff claims that this violated his right to

25   be free of cruel and unusual punishment, in violation of the Eighth and Fourteenth Amendment.

26        As defendants argue, it is well-settled that mere verbal harassment or abuse is not sufficient

27   to state a constitutional deprivation under 42 U.S.C. § 1983.  <u>Oltarzewski v. Ruggiero</u>, 830 F.2d 136,

28   139 (9th Cir. 1987).  Defendants further argue, based on plaintiff's deposition, that there is no

1    evidence that he was ever physically attacked or harmed as a result of the alleged statements to other

2    inmates regarding plaintiff being a child molester or a rat. D MSJ 11 at 38:12-15.

3            In regard to plaintiff's claim that defendants threatened other inmates with retaliation if they

4    spoke to plaintiff, defendants argue that plaintiff does not have standing to assert this claim involving

5    defendants' actions towards other inmates.   The court must agree.  Among the requirements for

6    standing under Article 3 of the Constitution is that the plaintiff must have suffered an injury in fact,

7    this is, an invasion of a legally protected interest.   See  Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871,

8    889, 110 S.Ct. 3177 (1990).   An allegation that defendants retaliated against other inmates does not

9    allege an injury to plaintiff.

10           Finally, in regard to plaintiff's claim that defendants walked him through the tier wearing

11   "scant clothing" while they pointed out his shortcomings to other inmates, it is undisputed that ESP

12   IP 7.11 governs the restraint requirements when ESP inmates in lockdown units are escorted to the

13   showers. ESP IP 7.11 requires that inmates being escorted to the showers wear only underwear and

14   shoes, and that they be restrained with wrist and ankle restraints. D MSJ 63.  Plaintiff admits that he

15   was wearing boxer shorts and shoes while being escorted to the shower.  D MSJ 9 at 33:23-24.

16   Thus, the court finds that defendants are correct in arguing that established policy was followed in

17   moving plaintiff to the shower, as he was confined to a disciplinary unit.   Any comments regarding

18   plaintiff's physical shortcomings amount to verbal harassment or taunting. As set forth above, these

19   do not amount to an actionable constitutional violation

20           The court finds that defendants have met their burden as the moving parties of informing the

21   court of the basis for their motion.  The burden therefore shifts to plaintiff to establish the existence

22   of a genuine issue as to any material fact.  See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,

23   475 U.S. at 586 .  The court finds that plaintiff has failed to carry this burden in regard to his first

24   cause of action.   In particular, the court finds that in opposing defendants' motion,  plaintiff has

25   simply repeated his claims of defendants inciting other inmates to act against him, placing him in

26   harm's way. Plaintiff has not alleged any physical harm arising from the verbal harassment he claims

27   he suffered.  Because plaintiff has not established a genuine issue of material fact regarding physical

28   harm, the court finds that under the law set forth above, defendants are entitled to judgement as a

1   matter of law on these claims.  Accordingly, the court will grant defendants summary adjudication on

2   the second cause of action.

3   Third Cause of Action

4       In his third cause of action, plaintiff alleges that defendants have exercised a policy of

5   depriving him of  sleep, and have used this method to punish him and retaliate against him on many

6   occasions.  Specifically, plaintiff alleges that defendants have done so by turning on lights in his cell

7   and ante room and leaving them on all night, flashing lights in his face when he is asleep and then

8   walking away laughing when he is roused from sleep, and tapping on the window to his cell to wake

9   him in the middle of the night.  Plaintiff alleges that this behavior violates his right under the Eighth

10  Amendment to be free of cruel and unusual punishment.

11      In his deposition, plaintiff could not identify any defendant who had participated in these

12  alleged activities. D MSJ 11 at 41: 7-22, 13 at 48:20-21.   Defendants argue that without a showing

13  of personal participation by one or more of the defendants, plaintiff cannot show personal liability.

14  Specifically, defendants argue that plaintiff cannot show that any of the named defendants actually

15  participated in any of the conduct he alleges in his third cause of action.

16      In opposing defendants' motion for summary judgment, plaintiff does not identify any

17  defendant who participated in the activities alleged in the third cause of action.  Rather, he discusses

18  factual allegations made in connection with the fourth cause of action. Liability under § 1983 arises

19  only upon a showing of personal participation by the defendant." Taylor v. List, 880 F.2d at 1045.

20  Here, plaintiff has failed to establish the existence of this essential element of this cause of action.

21  Under Celotex, the court must therefore enter summary judgment for defendants on this third cause

22  of action.

23  Fourth Cause of Action

24      In his fourth cause of action, plaintiff alleges that defendants have a policy, which they have

25  exercised on many occasions, of denying him access to personal hygiene items as punishment.

26  Plaintiff claims that defendants have used this method to punish him and retaliate against him by

27  doing the following: 1) turning the water to plaintiff's cell on for only five minutes per hour but not

28  telling him when it is turned on, thereby keeping him from getting water to drink and from flushing

his toilet, forcing him to urinate in the floor drain of his cell; 2) forcing plaintiff to remain in a cold cell without an extra blanket or a jacket; 3) forcing plaintiff to sleep on a mattress with bedding that was soaked with urine by another inmate while acknowledging this and laughing about it; 4) not allowing plaintiff to take a shower for more than a week; 5) passing food to plaintiff through a food slot contaminated by other inmates with feces and refusing to clean it; 6) leaving the toilet in plaintiff's cell backed up for days on end; and 7) confiscating every single item in plaintiff's cell except one pair of boxer shorts and a blanket, thereby forcing him to sleep on the floor for weeks at a time.  Plaintiff contends that by engaging in these acts, defendants violated his right under the Eighth Amendment to be free of cruel and unusual punishment.

To constitute cruel and unusual punishment in violation of the Eighth Amendment, prison conditions must involve "the wanton and unnecessary infliction of pain." Rhodes v. Chapman, 452 U.S. 337, 347 (1981).  Although prison conditions may be restrictive and harsh, prison officials must provide prisoners with food, clothing, shelter, sanitation, medical care, and personal safety. Id.; Toussaint v. McCarthy, 801 F.2d 1080, 1107 (9th Cir. 1986); Hoptowit v. Ray, 682 F.2d 1237, 1246 (9th Cir. 1982).  Where a prisoner alleges injuries stemming from unsafe conditions of confinement, prison officials may be held liable only if they acted with "deliberate indifference to a substantial risk of serious harm." Frost v. Agnos, 152 F.3d 1124, (9th Cir. 1998) (citing Farmer v. Brennan, 511 U.S. 825, 835 (1994).  The deliberate indifference standard involves an objective and a subjective prong. First, the alleged deprivation must be, in objective terms, "sufficiently serious." Farmer v. Brennan, 511 U.S. at 834 (citing Wilson v. Seiter, 501 U.S. 294, 298 (1991)).  Second, the prison official must "know of and disregard an excessive risk to inmate health or safety." Id. at 837.  Thus, "a prison official may be held liable under the Eighth Amendment for denying humane conditions of confinement only if he knows that inmates face a substantial risk of harm and disregards that risk by failing to take reasonable measures to abate it." Farmer v. Brennan, 511 U.S. at 835.  Prison officials may avoid liability by presenting evidence that they lacked knowledge of the risk, or by presenting evidence of a reasonable, albeit unsuccessful, response to the risk. Id. at 844-45.  Mere negligence on the part of the prison official is not sufficient to establish liability, but rather, the official's conduct must have been wanton. Farmer v. Brennan, 511 U.S. at 835; Frost v. Agnose, 152 F.3d at

14

1    1128; see also Daniels v. Williams, 474 U.S. 327, 33 (1986).

2          The following facts are undisputed.  ESP cell 9A30 is one of several seclusion cells, which

3    are cells designed to hold inmates who are difficult to manage, including those who exhibit behavior

4    that is assaultive or destructive.  D MSJ 277, D MSJ 11 at 40: 18 -19.  Cell 9A30 has a double door

5    configuration, one door leading into an "ante room," and the second door leading into the cell.  D

6    MSJ 803 -805.  The water in cell 9A30 is controlled from outside the cell to prevent inmates from

7    plugging and/or overflowing toilets or showers in order to flood the inmate's cell or unit.  Cell 9A30

8    contains a food box, as an alternative to a food slot, which is designed to further limit an inmate's

9    contact with officers.  D MSJ 804.  Plaintiff's disciplinary history reflects that he was transferred to

10   cell 9A30 on March 5, 2003, where he remained until August 6, 2003.

11         In regard to plaintiff's claim that defendants turned the water to plaintiff's cell on for only

12   five minutes per hour without telling him when, defendants argue that at his deposition, Plaintiff

13   could not  identify any named defendant who he claims deprived him of his five minutes of water.  D

14   MSJ 14 at 55.

15         In response to plaintiff's claim that he was forced to sleep on a urine soaked mattress,

16   defendants note that his grievance filed March 12, 2003, plaintiff admits that he complained about

17   the mattress and received a replacement mattress the same day.  D MSJ 270.  Defendants argue

18   therefore, that to the extent plaintiff's grievances demonstrate that he was forced to sleep one night

19   on a mattress that had urine on it, he fails to state an Eighth Amendment claim.  Defendants cite

20   Hunt v. Downing, 112 F.3d 452 (10th Cir. 1997), in which the court held that a detainee's claim that

21   he was forced to sleep one night in "urinated sheets" did not state a claim for violation of his rights

22   under the Eighth Amendment.

23         In regard to plaintiff's claim that he was not allowed to take a shower for more than a week,

24   defendants assert that plaintiff's special handling designation required that he receive a shower every

25   72 hours.  Plaintiff was unable to state at his deposition when he was deprived of a shower for more

26   than one week.  D MSJ 17 at 63:25.  Defendants note one incidence where plaintiff went more than

27   three days but less than one week without a shower.  They argue, however, that there is no evidence

28   that this was done intentionally or that plaintiff's failure to receive a shower amounted to a

15

1   significant deprivation as required under the Eighth Amendment.

2         Although plaintiff claims that he was passed food through a food slot contaminated with

3   other inmates' feces, defendants argue that there is no Eighth Amendment claim here, because

4   plaintiff was written up for putting his own excrement in the food box and then refusing to clean it

5   up.  D MSJ 560, 563.  Plaintiff also admitted in his deposition that he repeatedly poured a mixture of

6   feces and urine into the food box, where it would also run onto the anteroom floor.  D MSJ 18 at 68-

7   69.

8         Defendants assert that they are entitled to summary judgment on plaintiff's claim that his

9   claim that his toilet was backed up for days on end.  They argue that plaintiff evidences a complete

10  lack of personal knowledge about this claim, demonstrating that there is no triable issue of fact for

11  trial.  In his deposition, plaintiff indicated that he did not know when this occurred, where he was

12  housed when it occurred, who was responsible, or how many times he alleged the toilet was plugged

13  up.  D MSJ 18 - 19 at 69-71.

14        Finally, defendants respond to plaintiff's claims that everything in his cell was confiscated

15  except one pair of boxer shorts and a blanket, requiring him to sleep on the floor for weeks at a time,

16  and that he was forced to remain in a cold cell without an extra blanket or jacket.

17  It is undisputed that in an emergency grievance filed March 25, 2003, plaintiff states that he turned in

18  all of his bedding for a linen exchange, but did not receive his linens back, in addition to his mattress

19  and pillow being confiscated.  D MSJ 279.  Plaintiff was issued two suicide blankets instead.  Id.  In

20  the emergency grievance, plaintiff identified Officers Williams, Romero, Little and Horsely as the

21  individuals confiscating his mattress and pillow.  Defendants argue that because none of these

22  defendants are current defendants in this case, plaintiff cannot demonstrate that any named defendant

23  personally participated in plaintiff having his bedding, mattress and pillow removed from his cell.

24        Defendants further argue that plaintiff received four write-ups in three days, between March

25  18 and March 20, 2003, for using bedding items to stop up the toilet and flood his cell.  D MSJ 472-

26  671.  Defendants claim that they thus had a legitimate reason to confiscate plaintiff's bedding,

27  mattress, and pillow, where he had used all of these items to flood his cell immediately prior to the

28  items being confiscated.  Defendants stress that plaintiff was provided with two suicide blankets

16

1   until he received his property items back.  Thus, they argue, the deprivation was not sufficiently

2   serious to meet the objective element of the deliberate indifference standard.  Finally, defendants

3   argue that there is no evidence that the confiscation and withholding of plaintiff's bedding was done

4   maliciously or sadistically to cause harm, as required for the subjective element of deliberate

5   indifference.

6          The court finds that defendants have met their burden as the moving parties of informing the

7   court of the basis for this portion of their motion.  The burden therefore shifts to plaintiff to establish

8   the existence of a genuine issue as to any material fact.  See Matsushita Elec. Indus. Co. v. Zenith

9   Radio Corp., 475 U.S. at 586 .   Plaintiff, however, has not done so.  Plaintiff has again merely

10  repeated  the allegations in his complaint, and has not tendered evidence of specific facts in support

11  of his contentions.  This is insufficient under Rule 56(e) to show the existence of a genuine issue of

12  fact which would necessitate a trial.   In addition, the court finds that under the law discussed above,

13  defendants are entitled to judgment on these issues.  Accordingly, the court will grant defendants

14  summary adjudication on this fourth cause of action.

15  Fifth Cause of Action

16          In his fifth cause of action, plaintiff contends that Defendants have exercised a policy of

17  physically attacking him as punishment.  He claims that they have used this method to punish him

18  and retaliate against him on many occasions by the following: 1) placing plaintiff in four-point

19  restraints for two 2-hour stretches within a 24-hour period for minor infractions; 2) kicking plaintiff

20  in the groin while confined in four-point restraints; 3) hitting plaintiff in the shoulder; 4) purposely

21  placing ankle restraints on plaintiff too tightly; and 4) sexually assaulting plaintiff by forced digital

22  penetration of the anal opening and threatening to repeat the action if plaintiff filed any more

23  grievances.  Plaintiff claims that by engaging in these activities, defendants subjected him to cruel

24  and unusual punishment in violation of the Eighth and Fourteenth amendments.

25          DOP Information Bulletin ("IB") 93-58, in effect during 2003[2], governed restraining inmates

26

27          [2]Defendants explain that once it was adopted by the Board of Prison Commissioners, IB 93-58

28  became AR 655, which remained in effect until 2004, when it was subsumed into AR 645.

who demonstrated self-injurious behavior.   D MSJ 96-99.  It provides in part that "in an emergency situation, *i.e.,* when an inmate is an imminent threat to self or others, a registered nurse may place an inmate in restraints and obtain a physician's order within two (2) hours."   D MSJ 097 at § B(1). Plaintiff contended in his deposition that this policy was violated because he was placed in 4-point restraints for a  two- hour policy twice in twenty-four hours.   Plaintiff's contention is based on his interpretation of Section B(7) of IB 93-58, which states, "restraints shall not be applied for longer than twenty-four (24) hours, unless specific suicidal or violent behavior is again evidenced at the end of said twenty-four (24) hour period."

The court agrees with defendants that plaintiff's argument that Section B(7) prohibits the application of restraints twice in a 24-hour period is an incorrect interpretation of the clear language of the directive and forms no basis for a constitutional claim.  Further, the court agrees with defendants that the evidence, including plaintiff's own deposition testimony, demonstrates that both times plaintiff was placed in four-point restraints, it was because he was kicking the cell door, jumping up and down on his bed, and beating on the walls.  D MSJ 165 at 61:11-13; D MSJ 20 at 75:17-20; D MSJ 544.  The court finds that defendants have met their burden as the moving parties of informing the court of the basis for this portion of their motion.  The burden therefore shifts to plaintiff to establish the existence of a genuine issue as to any material fact.  See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. at 586 .

In his opposition to defendants' motion for summary judgment, plaintiff disavows the argument made in his deposition that placing him in restraints twice in a 24-hour period violates the regulation.  He argues rather that placing him in the restraints was a form of punishment and retaliation.   As stated above, defendants have presented evidence to support their claim that plaintiff was placed in restraints because he was kicking the cell door, jumping up and down on his bed, and beating on the walls.  Plaintiff, however, proffers no evidence suggesting that he was placed in restraints for two hours on two consecutive days maliciously or sadistically, or that he therefore suffered substantial deprivation.  Plaintiff  therefore does not establish a genuine factual dispute as to the purpose of placing him in the restraints.

Plaintiff  testified during his deposition that he did not remember the identify of the person

1   who he claims kicked him in the groin while he was in 4-point restraints.  D MSJ 21 at 79:6-7 and 19

2   - 20.  He also testified that he could not recall who hit him in the shoulder.  D MSJ 22 at 82: 10 -12.

3   Defendants assert that they are therefore entitled to summary adjudication on these claims under

4   Taylor v. List.  The court finds that defendants have met their burden as the moving parties of

5   informing the court of the basis for this portion of their motion.  The burden therefore shifts to

6   plaintiff to establish the existence of a genuine issue as to any material fact.  See Matsushita Elec.

7   Indus. Co. v. Zenith Radio Corp., 475 U.S. at 586.

8        In his opposition to defendants' motion, plaintiff argues that a video recording does not exist

9   for the March 20, 2003, incident, which constitutes a "spoliation," because this is when defendant

10  Falge kicked plaintiff in the groin.   In his opposition, Plaintiff also identifies defendant Kelly for the

11  first time as the person who allegedly "assaulted" him by striking him on the shoulder. Plaintiff's

12  claim regarding spoliation is rejected above. Further, plaintiff provides no evidence to support his

13  sudden identification of defendants Falge and Kelly as the persons who allegedly kicked him in the

14  groin and struck him on the shoulder.  These persons were not identified in plaintiff's first amended

15  complaint and in his deposition, plaintiff disavowed remembering who had kicked him or struck his

16  shoulder.   Plaintiff having failed to tender any evidence to support his claim, the court finds that

17  plaintiff has failed to carry his burden of establishing a genuine issue regarding who kicked or struck

18  him.

19       Plaintiff claimed in his deposition that defendant Cobbs purposefully placed an ankle

20  restraint on too tightly, causing an injury to plaintiff's ankle.  D MSJ 22 at 83-85.  On September 7,

21  2003, plaintiff submitted a medical kite to that effect.  Plaintiff confirmed in his deposition that the

22  cut was above his ankle and about three inches long.  D MSJ 023 at 86 - 87.  He stated that he did

23  not need stitches, and was told to put ointment on the cut and expose it to the air.   D MSJ 23 at

24  87:12-13.  Defendants contend that there is no evidence to support either the objective or the

25  subjective component of an Eighth Amendment claim.  The court finds that defendants have met

26  their burden as the moving parties of informing the court of the basis for this portion of their motion.

27  The burden therefore shifts to plaintiff to establish the existence of a genuine issue as to any material

28  fact.  See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. at 586.

1    In his opposition to the motion for summary judgment, plaintiff argues that defendant Cobb

2  was acting in retaliation when he applied the restrain too tightly, and that plaintiff's injury was not de

3  minimus.  Plaintiff provides no evidence to support these arguments.  The court finds, therefore, that

4  plaintiff has failed to carry his burden of establishing the existence of a genuine issue as to the nature

5  of his injuries.   Further, the court finds, under the evidence of plaintiff's own deposition, plaintiff's

6  injury was not serious enough to satisfy the objective component of his Eighth Amendment claim.

7  See Keenan v. Hall, 83 F.3d 1083, 1092 (9th Cir. 1996) (summary judgment correctly granted to

8  defendants where prisoner plaintiff suffered pain and cuts, where plaintiff did not allege cruel

9  conduct causing discomfort beyond that inherent from movement in restraints); Barker v. Fugazzi,

10  18 Fed.Appx. 663 (9th Cir. 2001)( where plaintiff alleged that restraints were too tight, his allegations

11  of injury were not serious enough to satisfy either the objective or the subjective elements of an

12  Eighth Amendment claim).

13    Defendants contend that no reasonable juror could conclude that plaintiff was sexually

14  assaulted as he claims in his fifth cause of action.    On July 11, 2003, plaintiff filed an emergency

15  grievance around 11:00 a.m. claiming that he had been sexually assaulted by defendant Kelly.  D

16  MSJ 399.  Plaintiff claimed that the assault occurred when he returned to his cell from the yard, and

17  that defendant Kelly placed his finger in Ortiz' anus when plaintiff knelt down to have his ankle

18  restraints removed.  Id.  Plaintiff claimed that former correctional officer Chayton Hall was the

19  second unit officer escorting plaintiff back to his cell, and that Mr. Hall was present when the alleged

20  assault occurred.  Id. Defendant Schaff, the shift sergeant, responded to plaintiff's cell to investigate

21  plaintiff's allegation of assault.  Id.  In the incident report filed by defendant Schaff on the matter,

22  Schaff stated that when he asked plaintiff if the accusation of sexual assault were true, plaintiff

23  admitted the accusation was not true and that he had lied, and stated, "but it's in an official record

24  now."  D MSJ 400; 785.  Because plaintiff told defendant Schaff he had made up the allegation,

25  Defendant Schaff responded in the emergency grievance that the grievance was not an "emergency"

26  as defined by AR 740.  D MSJ 399, 785.

27    Plaintiff filed a second emergency grievance the same day at 2:31 p.m., again claiming that

28  he been sexually assaulted by defendant Kelly.  D MSJ 401.  Defendant Neagle, who was the shift

1    sergeant on duty, responded to plaintiff's cell, and also responded that the allegation was "not an

2    emergency," based on plaintiff's admission earlier in the day that the alleged assault claim was false.

3    Id. Plaintiff was examined by the ESP medical department on July 17, 2003, for any evidence of

4    sexual assault.  D MSJ (sealed) 20.  The result of the medical evaluation was that there was no

5    evidence of sexual assault.  Id.

6           In addition to plaintiff being examined medically, the matter was referred to the NDOC

7    Inspector General's Office, who, in turn referred the matter to the Nevada Attorney General's Office

8    to conduct a criminal investigation.   Investigators were assigned to the case, and they traveled to

9    ESP to interview plaintiff.  The Attorney General's investigation was eventually closed without

10   referral for prosecution due to lack of evidence brought on by plaintiff's inconsistent statements to

11   investigators and refusal to submit to a polygraph examination.  D MSJ 797.  The court finds that

12   defendants have met their burden as the moving parties of informing the court of the basis for this

13   portion of their motion.  The burden therefore shifts to plaintiff to establish the existence of a

14   genuine issue as to any material fact.  See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475

15   U.S. at 586.

16          In opposition to defendants' motion, plaintiff argues that defendants offer only circumstantial

17   and hearsay evidence having little probative value to prove their position.  He claims that both

18   incident reports by defendant Schaff regarding the alleged sexual assault are self-serving documents,

19   prepared in preparation for litigation.  As the party opposing defendants' motion for summary

20   judgment, plaintiff is required to tender evidence of specific facts in the form of affidavits, and/or

21   admissible discovery material, in support of its contention that the dispute exists.  Rule 56(e);

22   Matsushita, 475 U.S. at 586 n.11.  The court finds that Plaintiff's attempts to challenge defendants'

23   evidence is insufficient to meet this requirement.   The court further finds that in light of the

24   evidence presented by defendants, no reasonable juror could find for plaintiff on this issue.

25          In light of all of the above, the court finds that defendants are entitled to summary

26   adjudication on plaintiff's fifth cause of action.

27   Sixth Cause of Action

28          In his sixth cause of action, plaintiff alleges that defendants have violated his right to petition

for redress of grievances and to access to the courts as guaranteed by the First and Fourteenth

Amendments.  Plaintiff claims that defendants have done so by: 1) limiting the number of grievances

he can file; 2) retaliating against him for filing too many grievances; 3) placing him in the ESP

"torture chamber" (9A-30) in order to deter him from filing grievances; 4) withholding grievance

forms; 5) writing notice of charges against plaintiff for filing too many grievances and/or allegedly

making false statements in grievances filed; 6) imposing harsher punishments on plaintiff than on

other inmates in retaliation for filing grievances; and 7) disregarding any grievance containing

disrespectful language.

Allegations of retaliation against a prisoner's First Amendment rights to speech or to petition

the government may support a section 1983 claim.  Rizzo v. Dawson, 778 F.2d 527, 532 (9th Cir.

1985); see also Valandingham v. Bojorquez, 866 F.2d 1135 (9th Cir. 1989).  To establish a prima

facie case, plaintiff must allege and show that defendants acted to retaliate for his exercise of a

protected activity, and defendants' actions did not serve a legitimate penological purpose.  See

Barnett v. Centoni, 31 F.3d 813, 816 (9th Cir. 1994); Pratt v. Rowland, 65 F.3d 802, 807 (9th Cir.

1995).  A plaintiff asserting a retaliation claim must demonstrate a "but-for" causal nexus between

the alleged retaliation and plaintiff's protected activity (i.e., filing a legal action).  McDonald v. Hall,

610 F.2d 16, 18 (1st Cir. 1979); see Mt. Healthy City School Dist. Bd. of Educ. v. Doyle, 429 U.S.

274 (1977).  The prisoner must submit evidence, either direct or circumstantial, to establish a link

between the exercise of constitutional rights and the allegedly retaliatory action.  Pratt, 65 F.3d at

806.  Timing of the events surrounding the alleged retaliation may constitute circumstantial evidence

of retaliatory intent.  See Soranno's Gasco, Inc. v. Morgan, 874 F.2d 1310, 1316 (9th Cir. 1989).

"Within the prison context, a viable claim of First Amendment retaliation entails five basic elements:

(1) an assertion that a state actor took some adverse action against an inmate (2) because of (3) that

prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First

Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal."

Rhodes v. Robinson, 408 F.3d 559, 567-68 (9th Cir. 2005).

In regard to plaintiff's claim that he was placed in cell 9A-30 to deter him from filing too

many grievances, defendants argue that plaintiff's disciplinary history report shows that he was

placed there because of his destructive and abusive behavior, not to deter filing grievances.  D MSJ 666-667.  They further argue that plaintiff's grievances filed while he was confined to cell 9A-30 demonstrate that he was not deterred from filing grievances. D MSJ 391-471.  Finally, defendants argue that the grievances submitted as exhibits necessarily also demonstrate that grievance forms were not being withheld from plaintiff.

Responding to plaintiff's allegation that he was issued a notice of charges for filing too many grievances and abusing the grievance process, defendants state that plaintiff was issued two notices of charges for abusing the grievance process.  One of the charges was dismissed through the appeal process, D MSJ 612, and one charge was upheld.   The notice of charges that was upheld, dated July 2003, was prompted by plaintiff's false claim that defendant Kelly sexually assaulted him and plaintiff's written statements about defendant Endel's character.  D MSJ 645.

Plaintiff alleges he received harsher punishments than other inmates in retaliation for filing grievances.  The only example plaintiff could provide in relation to this allegation during his deposition was the loss of yard issued discussed above under the first cause of action. D MSJ 32 at 124 - 126.   Defendants argue that the legitimate penological goal for the loss of yard was the attempt to bring plaintiff's inappropriate behavior under control.

In response to plaintiff's complaint that defendants ignore any grievance containing disrespectful language, defendants argue that the grievances in question are not meant to convey a legitimate grievable issue as envisioned by the First Amendment, but are intended to abuse the prison official in question and the grievance process.  Defendants cite as an example a grievance in which plaintiff claims he heard a rumor about personal issues concerning Defendant Endel.  D MSJ 646.

The court finds that defendants have met their burden as the moving parties of informing the court of the basis for this portion of their motion.  The burden therefore shifts to plaintiff to establish the existence of a genuine issue as to any material fact.  See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. at 586.

In opposing defendants' motion for summary judgment, plaintiff offers no evidence of specific facts such as would establish the existence of genuine issue of material fact.  Plaintiff simply

1   repeats the claims made in his complaint.  As set forth above "the opposing party may not rely upon

2   the denials of its pleadings, but is required to tender evidence of specific facts in the form of

3   affidavits, and/or admissible discovery material, in support of its contention that the dispute exists."

4   Rule 56(e); Matsushita, 475 U.S. at 586 n.11.  Thus, plaintiffs claims are insufficient to carry his

5   burden.  The court finds, therefore, that no genuine issue of material fact exists and that defendants

6   are entitled to summary adjudication on this sixth cause of action.

7   Seventh Cause of Action

8       Plaintiff alleges that defendants have impeded his access to the courts by the following: 1)

9   not allowing him to make phone calls to his attorney; 2) conducting frequent shake-downs of

10  plaintiff's cell where his legal papers were left in disarray or confiscated; 3) forcing plaintiff to

11  appear in socks; 4) delaying plaintiff's legal mail on unfounded pretexts; 5) urinating on plaintiff's

12  legal mail; 6) stealing plaintiff's stamps; 7) refusing to provide plaintiff a copy of all notice of

13  charges filed against him; 8) turning on plaintiff's shower in order to flood his cell and destroy his

14  legal paperwork; 9) denying plaintiff the right to review his medical records except in half-hour

15  stretches; and 10) denying plaintiff access to library legal material for extended periods.  Plaintiff

16  claims that defendants have thereby violated his rights under the First and Fourteenth Amendments.

17      A prisoner alleging a violation of his right of access to the courts must demonstrate that he

18  has suffered "actual injury."  Lewis v. Casey, 518 U.S. 343, 349-50 (1996).  The right to access the

19  courts is limited to direct criminal appeals, habeas corpus proceedings, and civil rights actions

20  challenging conditions of confinement.  Id. at 354-55.  "An inmate cannot establish relevant actual

21  injury simply by establishing that his prison's law library or legal assistance program is sub-par in

22  some theoretical sense."  Id. at 351.  Rather, the inmate "must go one step further and demonstrate

23  that the library or legal assistance program hindered his efforts to pursue a legal claim."  Id.  The

24  actual-injury requirement mandates that an inmate "demonstrate that a nonfrivolous legal claim had

25  been frustrated or was being impeded."  Id. at 353.  In Lewis v. Casey, the Supreme Court defined

26  prisoners' right of access to the courts as simply the "right to bring to court a grievance."  Id. at 354.

27  The Court specifically rejected the notion that the state must enable a prisoner to "litigate effectively

28  once in court."  Id. (quoting and disclaiming language contained in Bounds v. Smith, 430 U.S. 817,

24

825-26 (1977)); see also Cornett v. Donovan, 51 F.3d 894, 898 (9th Cir. 1995) (determining that prisoners' right of access to the courts is limited to the pleading stage of a civil rights action or petition for writ of habeas corpus).

In opposition to defendants' arguments, plaintiff argues that defendants allowed for or participated in the theft of plaintiff's legal papers on January 27, 2003, and caused or participated in allowing plaintiff's access to the E.S.P. law library to be limited or denied for extended periods. Plaintiff claims that this resulted in the loss of civil rights law suits case nos. 3:01-cv-0018, and 3:03-cv-0424. In regard to case no. 3:01-cv-0018, he argues that defendants violated various prison procedures and rules in confiscating and attempting to return his legal papers. In regard to case no. 3:03-cv-0424, plaintiff argues that defendants have not cited authority for their argument that access to the courts requires only access which meets constitutional minimums.

The court finds that defendants have met their burden as the moving parties of informing the court of the basis for their motion. The burden therefore shifts to plaintiff to establish the existence of a genuine issue as to any material fact. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. at 586 . The court finds that plaintiff has failed to carry this burden in regard to his seventh cause of action. Plaintiff's claims that defendants stole his legal papers, limited or denied access to the prison library, and violated prison procedures and rules in confiscating and attempting to return his legal papers do not address the issue in this access to court claim. That is that an inmate show actual injury by demonstrating that a nonfrivolous legal claim had been frustrated or was being impeded. See Lewis v. Casey, 518 U.S. at 353. The prior civil rights suits brought by Plaintiff, 3:01-cv-00018 and 3:03-cv-00424, were both decided on the merits. In 3:01-cv-00018, Plaintiff did not respond to Defendant's motion for summary judgment and alleged that his legal papers were confiscated and not returned, "irreparably damag[ing]" Plaintiff's position as a litigant. Although the Defendants contended that their motion should be granted based upon Plaintiff's failure to respond, the Magistrate Judge refused to do so in light of Plaintiff's pro se status and addressed all of the essential issues of the case on the merits. The Magistrate's Report and Recommendation was accepted by the District Court and judgment was entered against Plaintiff on the merits. No appeal was filed by Plaintiff.

1    In civil rights suit 3:03-cv-00424, two motions for summary judgment on behalf of the

2    Defendants were presented to the court and were fully briefed by the parties.  The court thereafter

3    granted summary judgment against Plaintiff in an 11-page decision, which was decided on the

4    merits.  No appeal of the court's decision was pursued by Plaintiff.

5    Plaintiff has completely failed to show that any actions by Defendants in this action have

6    resulted in the loss of the two aforementioned civil rights actions.  No prejudice to Plaintiff having

7    been shown, Plaintiff's claims do not establish a genuine issue of material fact such as would defeat

8    summary adjudication on this issue.  Further, because plaintiff has failed to show actual injury, an

9    essential element of his first amendment claim, defendants are entitled to judgment as a matter of

10   law on this seventh cause of action.

11   Eighth Cause of Action

12   In his eighth cause of action, plaintiff alleges violations of his right to due process as

13   guaranteed under the Fourteenth Amendment.  Plaintiff claims that defendants have exercised a

14   policy of filing false notices of charges against plaintiff in retaliation for filing grievances, routinely

15   failing to timely serve notices of charges on him or advise him of scheduled hearing dates, refusing

16   to allow plaintiff to call any witnesses or put on any type of defense at hearings, and refusing

17   plaintiff's repeated requests that a camera and recording device be placed in his cell.  Plaintiff claims

18   that as a result, he has had his stay at ESP for disciplinary segregation extended from his initial out

19   date of July 19, 2002, to the current out date of February 13, 2011.

20   Defendants contend that they are entitled to summary adjudication on this cause of action,

21   stating that plaintiff was written up 35 times for disciplinary infractions during the time period of this

22   case.  Defendants argue as follows: 1) prisoners do not have a due process right to cameras or

23   recording devices in their cells; 2) two of the notices of charges were written at Nevada State Prison

24   and are therefore not implicated in the instant action; 3) seven of the remaining 33 notices of charges

25   were written or heard by individuals who were not named in the instant litigation or dismissed by the

26   court; 4) only 9 of the remaining notices of charges which could be at issue in this case were written

27   by named defendants, and all of those notices of charges were supported by some evidence.

28   In opposition to defendants' motion, plaintiff contends that defendant McDaniel violated his

26

1   right to due process each time he denied plaintiff's notice of charges appeals and affirmed the

2   findings of guilt based on the "some evidence" standard.  Plaintiff further contends that defendants

3   are not entitled to summary judgment because he presents some evidence that the disciplinary action

4   against him was retaliatory.

5          The court finds that defendants have met their burden as the moving parties of informing the

6   court of the basis for their motion.  The burden therefore shifts to plaintiff to establish the existence

7   of a genuine issue as to any material fact.  See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,

8   475 U.S. at 586 .  The court finds that plaintiff has failed to carry this burden in regard to his eighth

9   cause of action.  While plaintiff claims that some evidence supports his claim that the notices of

10  charges against him were retaliatory, this alleged fact is not material to plaintiff's due process claim.

11  The standard for challenging a prison disciplinary hearing is whether some evidence supports the

12  hearing officer's decision.  Plaintiff does not deny that such evidence exists, and so fails to establish

13  a genuine issue as to this, or any other, material fact.  Defendants have provided citations to the

14  record showing that some evidence exists as to each of the 9 notices of charges actually at issue in

15  this case.  The court finds, therefore, that defendants are entitled to judgment as a matter of law on

16  this eighth cause of action.

17  Tenth Cause of Action

18         In his tenth cause of action, plaintiff claims that in doing the things alleged in his complaint,

19  defendants have conspired to deprive him of equal protection of the law based on the fact that he is a

20  Mexican.  Plaintiff claims that in doing so, defendants have violated 42 U.S.C. § 1985.

21         The relevant portion of the statute,  42 U.S.C. § 1985(3), prohibits two or more persons from

22  conspiring to deprive any person or class of persons of the equal protection of the law. The elements

23  of a § 1985(3) claim are: (1) the existence of a conspiracy to deprive the plaintiff of the equal

24  protection of the laws; (2) an act in furtherance of the conspiracy and (3) a resulting injury. Scott v.

25  Ross, 140 F.3d 1275, 1284, rehearing den., 151 F.3d 1247 (9th Cir.1998).

26         Defendants move for summary adjudication of this cause of action, contending that plaintiff's

27  testimony demonstrates that he cannot show there was a conspiracy to deprive him of his

28  constitutional rights.  Specifically, defendants argue that plaintiff cannot identify any act by any

1   particular defendant that deprived him of his civil rights.  Plaintiff claimed in his deposition that he

2   heard an unidentified person call him a "wetback," but admits that he didn't remember any of the

3   named defendants making any racial slurs during the operative time for this complaint. D MSJ 47 -

4   48.  Defendants argue that this, standing alone, fails to state a claim for conspiracy. In opposition to

5   defendant's motion, plaintiff argues that defendants conspired to commit "each act" alleged in the

6   complaint, and that "the facts as a whole meet the requirement to state a claim for civil conspiracy."

7           The court finds that defendants have met their burden as the moving parties of informing the

8   court of the basis for their motion.  The burden therefore shifts to plaintiff to establish the existence

9   of a genuine issue as to any material fact.  See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,

10  475 U.S. at 586 .  The court finds that plaintiff has failed to carry this burden in regard to his tenth

11  cause of action.  Again, "the opposing party may not rely upon the denials of its pleadings, but is

12  required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery

13  material, in support of its contention that the dispute exists." Rule 56(e); Matsushita, 475 U.S. at

14  586 n.11.   In light of this court's finding that defendants are entitled to summary adjudication on

15  each of plaintiff's remaining causes of action, Plaintiff's general reference to the facts alleged in the

16  complaint are insufficient to meet this standard.  Further, the court agrees with defendants that

17  plaintiff's claim regarding racial slurs by unidentified persons who are not parties to this action

18  provides no support for plaintiff's conspiracy claim.  The court finds, therefore, that defendants are

19  entitled to judgment as a matter of law on this tenth cause of action.

20                                                    **CONCLUSION**

21          **IT IS THEREFORE ORDERED** that plaintiff's motion for a finding that defendants

22  committed acts of spoliation (Docket # 188) and second motion for the finding of spoliation against

23  defendants (Docket # 234) are **DENIED.**

24          **IT IS FURTHER ORDERED** that defendants' motion for leave to file a brief in excess of

25  pages limits imposed by Local Rule 7-4 (Docket # 251) is **GRANTED.**

26          **IT IS FURTHER ORDERED** that defendants' motion for a one-day extension of time to

27  file their opposition to plaintiff's second motion (Docket #263) for summary judgment is

28  **GRANTED**.

1    **IT IS FURTHER ORDERED** that plaintiff's motion for leave to file a supplemental brief to

2  plaintiff's motion for summary judgment (Docket # 261) is **DENIED**.

3    **IT IS FURTHER ORDERED** that defendants' second motion for summary judgment

4  (Docket # 255) is **GRANTED** in its entirety.

5    **IT IS FURTHER ORDERED** that plaintiff's second motion for summary judgment

6  (Docket # 241) is **DENIED as moot.**

7    **IT IS FURTHER ORDERED** that all other pending motions in this case are **DENIED** as

8  moot.

9    **IT IS FURTHER ORDERED** that the clerk shall enter judgment in accordance with this

10  order and close this case.

11    DATED this 24th day of March, 2009.

12

13

14    _____

15    LARRY R. HICKS
      UNITED STATES DISTRICT JUDGE

16

17

18

19

20

21

22

23

24

25

26

27

28